Robert Hosie v. Levi L. Barbour and James T. Hurst.

*Indorsement—Accounting for value of property to be applied in satisfaction of note.*

A creditor was secured in part by a chattel mortgage and in part by the signature of an accommodation indorser. He took possession under his mortgage, and as the indorser was suspected of making fraudulent conveyances of his real estate he levied an attachment on

that. Another person had previously levied on the same land, and still another did so afterwards. The debtor went into bankruptcy and trustees were appointed to compromise his debts. These trustees agreed with the creditor for a transfer to them of his possession under the chattel mortgage, and in return they provided for all but a small portion of his claim. This, it was thought, the land under attachment would be sufficient to satisfy, and he took the debtor's note for the amount with indorsements. The land, however, was sold under the first attachment levy, and as the owner did not redeem, the creditor and the person holding the subsequent attachment did so, and the latter afterwards conveyed his interest to the creditor. The creditor then sued the indorser upon the note given by the debtor for the balance of the claim against him, and the indorser, claiming that the land should first be sold and the proceeds applied to the payment of the note, filed a bill against the creditor to have that done. *Held* that as it did not appear that the indorsement was procured in bad faith, and as it apparently was not foreseen that the prior encumbrance on the land would have to be removed and that it might cost something to obtain the release of the fraudulent conveyances, all the complainant indorser could claim was that the creditor should account for the value of the land; that the excess in the value thereof above what it had necessarily cost him to obtain control of it should be applied upon the note; and that the indorser was liable for the balance. The creditor was entitled to protect himself by redeeming the land from the sale on the first attachment, and the question whether the creditor was remiss in the performance of some duty to the indorser's prejudice, or whether he had needlessly paid out money to secure the title, should be settled on the accounting.

Appeal from the Superior Court of Detroit. Submitted October 20. Decided October 31.

Bill for accounting, etc. Complainant appeals. Affirmed.

*Henry M. Campbell* and *Alfred Russell* for complainant. Sureties are entitled to a strict construction of the obligation creating their responsibility: *Gunn v. Geary* 44 Mich. 616; if a creditor neglects to perform any of the conditions or terms which form the consideration of the surety's contract, the surety is discharged: *Jones v. Keer* 30 Ga. 93; or if he neglects to obtain payment out of the estate of a deceased debtor: *Ramsey v. Bank* 2 Penn. 203; 5 Wait's Actions 226, 231; *Com. v. Vanderslice* 8 S. & R. 452; the abandonment of an execution which has once been actually

levied upon the goods of the principal will discharge the surety : 2 Am. Lead. Cas. 395 ; *De Golyar P. & S.* 439 ; *Bank v. Edwards* 20 Ala. 512 ; *Sherraden v. Parker* 24 Ia. 28 ; *Ferguson v. Turner* 7 Mo. 497 ; *Mayhew v. Crickett* 2 Swanst. 185 ; *Ives v. Bank of Lansingburgh* 12 Mich. 361 ; *McMullen v. Hinkle* 39 Miss. 142 ; a surety can not be called upon for payment unless the creditor exhausts the securities he holds from his debtor and his remedies against him, or transfers those remedies to the surety : 5 Wait's Actions 195 ; *King v. Baldwin* 2 Johns. Ch. 554 ; *Boultbee v. Stubbs* 18 Ves. 23 ; *Rosborough v. McAliley* 10 S. C. 235.

*Dwight C. Rexford* and *Hoyt Post* for defendants.

COOLEY, J. The leading facts in this case are not in dispute, and they may be stated as follows :

On, and for some time prior to October 1, 1875, one James T. Hurst was indebted to the defendant Barbour in about the sum of $21,000, for which Barbour held a chattel mortgage on a stock of lumber at Wyandotte. Upon the notes representing a portion of this indebtedness Thomas Hurst was accommodation endorser. In July, 1875, Barbour had proceeded against Thomas Hurst on his indorsements by attachment, and his writ had been levied on certain real estate in Detroit which Thomas Hurst had owned, but which, as was claimed, he had fraudulently conveyed to members of his family. Barbour also took possession under his chattel mortgage. In this condition of things James T. Hurst filed his petition in bankruptcy, to secure a settlement and compromise of his debts, and George Prentiss and Robert J. Hackett were appointed trustees to carry out the proposed compromise. The trustees entered into negotiation with Barbour whereby it was arranged that he should transfer to them his possession under the chattel mortgage, and they should give him paper which provided for all his demand except the sum of $2915. For this sum James T. Hurst gave his own note with complainant and one Post as endorsers. There is a disagreement between the parties as to the understanding on

which this note was given. Complainant avers that it was understood Barbour should proceed to judgment in his attachment suit, have the fraudulent conveyances set aside and the attached land sold to satisfy the amount of his note before any resort should be had to the endorsers and he testifies that he was assured when he endorsed the note that the land attached would be ample for the satisfaction of the debt. Barbour on the other hand asserts that he was only to hold the judgment as collateral to the note; and that while he believed at the time that the land attached would be ample for the payment of the note, it was also expected that the parties to whom Thomas Hurst had conveyed it would voluntarily release so that the land could be made available without further litigation or cost. This, however, they refused to do.

At the time Barbour attached the Thomas Hurst land there was a prior levy upon it in favor of one Hawkins, and upon this a sale was made May 3, 1876, and Hawkins became purchaser for $1030.26, the amount of his judgment. Hurst did not redeem from this sale within the year allowed by law, but he sued out a writ of error to remove the case to the Supreme Court, on the ground that it had been prematurely entered. While the writ of error was pending it became necessary for Barbour, if he proposed to make his attachment lien available, to redeem from the Hawkins judgment, and he made arrangement with one Darling, who had subsequent levies upon the same land, whereby it was agreed they should share equally in the redemption from Hawkins, and in the cost of further proceedings. The redemption was made accordingly, and a decree in chancery was obtained which set aside the conveyances made by Thomas Hurst except one which was made to his wife. The land was then sold on Darling's levies and bid in by Barbour and Darling. Darling subsequently conveyed to Barbour, who has since been and is now in possession.

In February, 1881, Barbour brought suit against complainant on his indorsement. Complainant then filed his bill in this case, setting forth therein the facts as he claims

them to be, and praying that the Thomas Hurst land be sold and the proceeds applied to the satisfaction of Barbour's judgment; that an account of rents and profits received by Barbour may be taken; that the Hawkins levy and sale and all subsequent transfers be declared null and void and set aside, and that the note with complainant's indorsement be decreed to be paid and satisfied. Barbour answered giving his version of the facts, and the court decreed "that the promissory note mentioned and described in the bill of complaint in this cause is a valid and subsisting legal obligation against said complainant and said defendant Hurst, and that the complainant is liable to defendant Barbour for such amount as may be found to be due thereon, and that it be referred to William J. Craig, circuit court commissioner for said Wayne county, to take proofs and state an account between the parties to this cause and report the same to this court." Complainant appealed.

We fail to perceive that this decree gives to the complainant less than he is entitled to, whether his account of the facts is received or that which is given by Barbour. Both concede that whatever should be realized from the Thomas Hurst lands, ought to be applied to the satisfaction of this note, and the principal difference between them is that the complainant insists that the remedy in respect to the land was to be exhausted before resort should be had to the note, and Barbour denies there was any such understanding. But whatever the fact may be as to this, we find it charged by one party and admitted by the other that Barbour has now obtained the title to the property, so far as any legal proceedings would secure it. It seems to be plain, then, that nothing remains but for the parties to come to an accounting.

If the value of the land in Barbour's hands exceeds what it has cost him, then complainant is equitably entitled to have the excess applied on this note. But we do not perceive that he can have any further equity unless Barbour was remiss in the performance of some duty to the prejudice of complainant, or unless he has unnecessarily paid out

money to procure the title. But these questions would arise on the accounting and not before.

Under the peculiar complications which existed at the time the note was given, it is not reasonable to suppose the parties contemplated a particular course of proceedings that should be wholly unaffected by circumstances. Something must be supposed left to discretion in such cases, and when unexpected circumstances arise, parties must act in view of them. In this case the parties do not appear to have considered what effect the Hawkins judgment would have upon their arrangements; but when sale was made upon it, redemption was apparently forced upon Barbour as a necessity. What result the proceedings to set aside the conveyances by Thomas Hurst might have was also uncertain; and the fact that they were successful in part only, tended to a further complication of proceedings. Barbour apparently deemed it prudent to make the arrangement he did make with Darling; but this certainly did not satisfy his debt unless it put into his hands property to an amount equal to the debt, which, in equity, as between himself and complainant, ought to be applied upon it. No bad faith on Barbour's part is shown, and nothing which can estop him from demanding full payment if he has not already received it.

This being so, the decree appealed from must be affirmed with costs, and the cause remanded.

The other Justices concurred.