THE GRAND RAPIDS SAVINGS BANK v. MINERVA A. DENISON ET AL.

*Mortgage—Foreclosure—Marshaling assets—Principal and surety— Subsequent incumbrancer—Equities—Parties.*

1. Where, after conveying a portion of his real estate to his wife, the husband and wife mortgaged the entire property to secure the husband's debt, which is further secured by a chattel mortgage on the husband's stock in trade and by his turning over to the mortgagee a number of notes belonging to him, the wife is entitled, even in the absence of any express agreement, and as a matter of law, to have the chattel-mortgage security exhausted and the notes accounted for, unless shown to be absolutely worthless, before the sale of her real estate under the mortgage.

2. The mortgagee will not be relieved from applying his interest in the chattel-mortgaged property on his claim under the real-estate mortgage by reason of its sale to a second mortgagee, subject to the first mortgage, on a foreclosure of the second mortgage, there being no showing that the deed to the wife was not a *bona fide* conveyance.

3. The second chattel mortgagee is not a necessary party defendant in a suit to foreclose the real-estate mortgage.

Appeal from Kent. (Grove, J.) Argued June 15, 1892. Decided July 1, 1892.

Bill to foreclose a mortgage. Defendants Denison appeal. Decree reversed, and one entered in accordance with the opinion. The facts are stated in the opinion.

*Taggart, Wolcott & Ganson,* for complainant.
*Fletcher & Wanty,* for appellants.

MORSE, C. J. The bill in this case was filed to foreclose a mortgage upon lands owned by Minerva A. Denison, the mortgage being executed by her and her husband, William C. Denison, jointly, to secure the latter's debt. The mortgage also conveyed lands owned by the husband, which were also embraced in this foreclosure suit. Complainant obtained in the court below the usual foreclosure decree, the sum found to be due being $4,029.49. The Denisons appeal to this Court.

The contest here is over the right of Mrs. Denison.

The mortgage was given July 10, 1889, for $20,000, and covered several parcels of land. Previous to May 9, 1889, William C. Denison owned the mortgaged premises. On that day he conveyed a portion of the same to his wife. At the time of such conveyance there were also mortgages upon the property, and it is claimed to have been thus incumbered to within $5,000 of its value. The complainant contends that it was worth much more. The consideration of this deed from Denison to his wife, according to Denison's statement, rests upon the following facts: The homestead of the Denisons was held by them in common, Denison having deeded a half interest in the same to his wife some 8 or 10 years ago, and she had put $800 of her money into the dwelling-house. About three years ago the homestead was mortgaged to raise $5,000 for use in the business of the husband. It

was agreed between them that if the wife would sign the mortgage he would secure her for that amount upon other property. The real estate covered by the mortgage to complainant was deeded by Denison to his wife in pursuance of this agreement.

At the time complainant's mortgage was taken there had been turned over to the bank a large number of notes, as collateral security, which Denison had taken from his customers in his business, which was that of a dealer in agricultural implements. Denison also, on July 9, 1889, gave a chattel mortgage upon his stock in trade to complainant for $11,000. The next day—July 10— Denison gave a chattel mortgage upon the stock to the Belknap Wagon & Sleigh Company for the sum of $1,600.

Mrs. Denison claims:

"1. That before resorting to the lands of appellant the mortgagee must fully account for and exhaust all its other securities owned by W. C. Denison, including both the collateral and the chattel mortgage on the stock, and could not abandon said stock to the Belknap Wagon & Sleigh Co.

"2. That complainant cannot receive a decree for a specific amount due from W. C. Denison, and an order for sale of the mortgaged premises, including those of appellant, without accounting fully for all of said collateral security, or providing that the collateral still in its hands should be either sold for what it would bring, or else turned back to some of the parties in interest.

"3. That the complainant, through its director Tolford, has received money and notes from sales of the personal property mortgaged which it has not accounted for, and which have never been credited on the notes for which complainant has received a decree.

"4. That, if it should be found that the equity of the claim of the Belknap Wagon & Sleigh Co. is superior to that of the appellant Mrs. Denison, still the Belknap Wagon & Sleigh Co. has now in its hands, awaiting the result of this cause, personal property sufficient to pay itself and the mortgage sought to be foreclosed in this suit, and it should have been brought into this cause,

and said personal property accounted for and exhausted before resorting to the lands of the appellant."

Mrs. Denison was not sworn in the case, and nothing is shown as to any express agreement with her that the notes turned out to the bank, and its chattel-mortgage security, should first be exhausted before her property was resorted to; but under the authorities we are satisfied that she was entitled to have the notes accounted for, unless they were absolutely worthless, before her premises should be reached upon the real-estate mortgage. All the money collected upon these notes, however, was credited to her, and the evidence shows that the balance of the notes are worth but little, if anything.

The same rule applies to the chattel mortgage.

It is contended that the Belknap Wagon & Sleigh Company has a superior equity as against Mrs. Denison, because its debt was contracted before this real property was deeded by Denison to his wife, and credit was given upon the faith of his ownership of such property; and that, therefore, Mrs. Denison's rights should be subordinated in this mortgage to the interest of the Belknap Wagon & Sleigh Company. But there is no showing in this record that the conveyance of the real estate to Mrs. Denison was not founded upon a *bona fide* consideration; and the company, in bidding in the property, recognized the chattel mortgage to complainant, and took the property subject to such mortgage. The interest of complainant in such property is therefore preserved, and must be applied upon its claim against Denison before the property of Mrs. Denison can be sold upon the real-estate mortgage.

The property covered by the chattel mortgage was first put under the control of William D. Tolford, a director of complainant, who testifies that he was acting under an arrangement between complainant, the Belknap Wagon

& Sleigh Company, McCormick & Co., who held a third chattel mortgage, and William C. Denison, as agent for all of them, and under pay. While Tolford had charge of the property he converted a portion of the stock into money and notes. He received in money $1,114.20 and some $500 or $600 in notes. Of this he paid out on commission goods and for expenses a certain amount, leaving in his hands $746.07 in cash and the notes. This balance he claims for his services. It is contended that this balance should be applied on the real-estate mortgage. The condition of the record is such that we cannot now determine this question, but, as the record must be remanded, this contention will be left open to further proof.

H. P. Belknap, of the Belknap Wagon & Sleigh Company, testifies that the value of the property taken upon the chattel mortgage was between $3,000 and $3,500. The defendants claim that it was worth $7,000. At the time the Belknap Wagon & Sleigh Company bid in the property its debt was $1,800, and the property was sold to the company upon its mortgage subject to complainant's mortgage.

The record will be remanded, that proofs may be taken in the court below to ascertain the value of the property taken on the Belknap Wagon & Sleigh Company mortgage. The amount of such value must, at the time it was so taken, he deducted from the amount due on the mortgage in question in this case. Proofs should also be taken as to the money and notes in Tolford's hands, which, in our opinion, should be treated as in the hands of complainant, less a deduction for a reasonable compensation to Tolford. The collateral notes not collected or accounted for should be returned to the Denisons.

There is no necessity of the Belknap Wagon & Sleigh Company being made defendant in this suit.

Decree reversed, and decree entered here in accordance with the views above expressed.

The other Justices concurred.