CHABUT v CHABUT

1. EVIDENCE—REAL ESTATE—APPRAISALS—MORTGAGE VALUE.

Appraisals of the value of real estate, made by a qualified expert, were properly admitted into evidence as substantive evidence of the value of a mortgage on the property.

2. EVIDENCE—ADMISSIBILITY—EXPERT TESTIMONY—JUDGES—DISCRETION—VALUE OF PROPERTY—FACTUAL BASIS OF TESTIMONY.

The admissibility of testimony of an expert witness and the investigation which the expert has conducted, upon which his opinion is based, is within the sound discretion of the trial judge, and a ruling that an expert on property values had conducted an investigation of the market values of similar properties and that no more testimony was necessary to establish the factual basis for the expert's valuation was not an abuse of the judge's discretion.

3. MORTGAGES—FORECLOSURE—SETTING ASIDE SALE—INADEQUACY OF PRICE.

A foreclosure sale may not be set aside solely because of inadequacy of price because a debtor-mortgagor can protect himself from an unreasonably low bid through his right of redemption; therefore, a portion of a judgment which gave a mortgagee bank the option of setting aside a foreclosure sale at which it had obtained the mortgaged property and conducting a new sale because the sale price was inadequate, was erroneous.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 31 Am Jur 2d, Expert and Opinion Evidence § 141.

Admissibility of hearsay evidence as to comparable sales of other land as basis for expert's opinion as to land value. 12 ALR3d 1064.

Competency of witness to give expert or opinion testimony as to value of real property. 159 ALR 7.

[3] 55 Am Jur 2d, Mortgages §§ 510 et seq., 673, 864 et seq.

[4] 55 Am Jur 2d, Mortgages § 618 et seq.

[5] 55 Am Jur 2d, Mortgages § 922.

[6, 7] 74 Am Jur 2d, Suretyship § 202.

[8] 55 Am Jur 2d, Mortgages § 905.

4. JUDGMENT—ALTERNATIVES—VALIDITY OF JUDGMENT.

The invalidity of one alternative of a trial court's judgment which allowed a defendant two alternative courses of action does not impair the validity of the second alternative, where the net effect with respect to the defendant's reimbursement to the plaintiff is the same whether the defendant elects one option or the other.

5. MORTGAGES—FORECLOSURE—DEFICIENCY—DEFENSES—INSUFFICIENT BID—CLAIM AGAINST MORTGAGEE—STATUTES.

A statute which provides that a mortgagor against whom the mortgagee has a deficiency judgment after a foreclosure sale may show as a defense and set-off that the property sold was fairly worth the amount of debt secured by it or that the amount bid was substantially less than the property's true value does not provide a mortgagor with a claim against a mortgagee who is satisfying a deficiency out of available additional collateral, after the mortgagee has sold mortgaged property for an unreasonably low price (MCLA 600.3280; MSA 27A.3280).

6. PRINCIPAL AND SURETY—CREDITORS—DUTY OF CREDITORS.

A surety may require the creditor to resort to property of the principal which is subject to the indebtedness or to collateral security in the principal's possession before resorting to the surety or any security furnished by him, and the creditor has the duty to preserve and enforce the collateral held by him for the principal debt and dispose of and apply it not only for his own security but also for the surety's indemnity.

7. CREDITORS' SUIT—SATISFACTION OF DEBT—ACCOMMODATION ENDORSERS—COLLATERAL—VALUE OF PROPERTY.

A creditor must, in satisfaction of a debt, proceed against the collateral in such a fashion so as to protect the rights of an accommodation endorser, and the value of the collateral used to satisfy the debt is the value at the time that the property is taken.

8. MORTGAGES—FORECLOSURE—DEFICIENCY—VALUE OF PROPERTY—ADDITIONAL COLLATERAL.

A mortgagee bank which chose not to attempt to bid in property at its fair market value on the date of the foreclosure sale, and instead bid in at a lower price, had no claim against additional collateral which accommodation endorsers had pledged as security, and money which the endorsers had paid to the bank to redeem this collateral was wrongfully obtained, where the

property was worth the entire amount of the indebtedness at the time of the sale.

Appeal from Genesee, John W. Baker, J. Submitted December 2, 1975, at Lansing. (Docket No. 21589.) Decided January 6, 1976.

Complaint by Hector M. Chabut and Joanne R. Fox against Hector Chabut, Jr., Jean Chabut, Thomas Verleni, Ruth Verleni, and Genesee Merchants Bank and Trust Company to recover money paid by plaintiffs to Genesee Merchants Bank and Trust to redeem stock previously pledged as additional collateral to facilitate issuance of a mortgage. Judgment for plaintiffs. Defendant bank appeals. Affirmed.

*Cline & Cline,* for plaintiffs.

*Neithercut & Neithercut* (by *Kittredge R. Klapp),* for defendant Genesee Merchants Bank and Trust Company.

Before: R. B. BURNS, P. J., and D. E. HOLBROOK and D. F. WALSH, JJ.

D. E. HOLBROOK, J. In this case plaintiffs, Hector M. Chabut, M.D. and Joanne R. Fox, commenced this action on October 11, 1972, seeking to recover from defendants Hector and Jean Chabut, Jr., and Thomas and Ruth Verleni, an amount of money which the plaintiffs had paid to defendant Genesee Merchants Bank and Trust. The amount of money, $76,165.06, was paid to defendant bank by the plaintiffs to redeem an amount of stock which the plaintiffs had previously pledged as additional collateral in order to facilitate the issuance of a mortgage by defendant bank. Plaintiffs subsequently filed an amended complaint adding defend-

ant bank as a party defendant, alleging that defendant bank had purposely and unreasonably underbid the value of the property in question at the foreclosure sale conducted on February 10, 1972.

The trial judge accurately sets forth the facts in the case as follows:

"This case concerns a mortgage and note executed June 1, 1970 by Medical Management Consultants, Inc. for a $420,000.00 loan. Security for the obligation running to the Genesee Merchants Bank & Trust Co. was an office building in Flint and $150,000.00 worth of National Bank of Jackson stock. $60,000.00 was placed in escrow for 12 monthly payments. Plaintiffs Hector M. Chabut and Joanne R. Fox provided the required stock security. The office building was purchased by Medical Management Consultants for a price of $400,000.00.

"Rentals did not go well in the building. No payments were made on the loan save the $60,000.00 escrowed amount. In November of 1971, the Bank began foreclosure by advertisement. Plaintiffs were aware of the foreclosure and requested the bank not to sell the stock to which the bank agreed.

"A Sheriff's sale was held and the Bank bid in the property for $368,324.49. This bid did not include one-half of the value of the pledged stock.

"Plaintiff Hector Chabut decided to try to redeem the property, but was unsuccessful in raising sufficient money and the redemption period expired.

"Later on plaintiffs redeemed the pledged stock by payment to the Bank of $76,165.06.

"This suit was instituted by plaintiffs on the theory that the Sheriff's sale was less than the true and reasonable value of the property.

"Plaintiffs rely on the testimony of J. Troxel that the value of the property was at least $100,000.00 more than the bid price offered by the Bank. Plaintiffs further rely on MCLA 600.3280 and MSA 27A.3280 that provides mortgagors can show as a defense and set off

that the property sold was fairly worth the amount of the debt secured by it at the time and place of the sale or that the amount bid was substantially less than its true value and such showing shall constitute a defense to such action and shall defeat the deficiency judgment against him either in whole or in part to such extent.

"Witness Jay C. Troxel was the appraiser hired by the Bank for advice as to the value of the property. He made an appraisal dated April 23, 1970 in the amount of $621,000.00.

"At the time of the foreclosure the total amount owed to the Bank was $440,823.49. The stock was valued at a total of $144,998.00 so that it was listed at $72,499.00 as half of its true value. By deducting the latter amount from its claim the Bank arrived at the figure of $368,324.49.

"Testimony from Bank Official Wisner was to the effect that a pledge of stock as required in this case was unique in his experience at the Bank.

"The evidence shows that since the Bank has had possession of the property there has been additional improvement expenditures made and that rentals have increased substantially so that most units have been rented.

"Witness Atchinson, a Bank Official, submitted the property for foreclosure sale for a bid of $440,823.49 the balance due, but was overruled by higher Bank Officials and the lower bid was made. By subtracting 50% of the value of the pledged stock from the balance due figure, the defendant Bank arrived at a value which was the eventual amount bid at the sale. Apparently this was decided by witness Wisner, a Bank Officer, on advice of counsel.

"Mr. Wisner had knowledge of the prior appraisal submitted to the Bank by Mr. Troxel in the amount of $621,000.00 on April 23, 1970. Mr. Troxel reduced his estimate because of poor rentals to show a value on November 10, 1971 of $464,000.00 as incomplete and $498,000.00 if completed. As of July 21, 1972, Mr. Troxel advised Mr. Chabut that the value had not changed.

"The issue in this case appears to be: What was the

fair value of the property in question at the date of the Sheriff's sale and did the defendant Bank substantially underbid the value of the property at the said sale so as not to be entitled to the additional money obtained from the redemption of the pledged stock.

"It is admitted by the defendant Bank that no other appraisals were made prior to the sale bid other than those of Mr. Troxel. Thus, it appears the bid offered was a computed figure made by Bank personnel without reliance on outside appraisals. Also, it was a unique procedure as far as the Bank was concerned according to Bank personnel who testified."

The trial court determined in its opinion in part as follows:

"It would appear that the court can reasonably reply *[sic]* on the Troxel appraisal as of November 10, 1971 when he found a value of $464,000.00 with the building not complete.

\* \* \*

"It would seem that under the circumstances of this case, the sale should be set aside and the minimum sale at the new foreclosure sale bid should be set at $440,823.49 which was the balance due to the defendant Bank on February 10, 1972 by the Medical Management Consultants, Inc. In the event that defendant Bank would prefer to reimburse plaintiffs in the amount $72,499.00, then that could be accomplished and no new sale would be necessary. In the latter event, the plaintiffs should be entitled to a Judgment in that amount plus costs and interest from the date of redemption of the Jackson National Bank stock from the defendant Bank."

The defendant bank appeals as of right and raises several issues.

I

*Were the appraisals of Mr. Troxel, an expert*

*witness, properly admitted into evidence as substantive evidence of the values of the mortgage?*

There can be no question as to the fact that Mr. Troxel was a well-qualified expert on the value of property in the Flint area. The trial judge so ruled and such ruling was a proper exercise of his discretion. *O'Loughlin v Detroit & Mackinac R Co,* 22 Mich App 146; 177 NW2d 430 (1970). Prior to the time the mortgage was given, Mr. Troxel made an appraisal of the subject property at $621,000. This appraisal was a part of the bank's file concerning this property. Mr. Ellsworth, defendant bank's vice-president in charge of the mortgage department, testified as to this appraisal which was used by the bank in authorizing the mortgage. In fact, it was the only appraisal in the bank's file. This was a part of the history of the transaction. In any event, no prejudice resulted to the defendant bank concerning such appraisal because the trial judge relied only on Mr. Troxel's last appraisal which was made at the time of the foreclosure sale, at which the value of the property was set at $464,000.

## II

*Was reversible error committed when the trial court did not permit the defendant bank to establish the factual basis upon which its expert witness based his opinion?*

The defendant bank's expert witness, Mr. Alfred Taylor, was properly qualified to testify as to the value of property, such as the subject land and building. The trial court so ruled. Mr. Taylor testified he had made two appraisals in the Flint area in the 15 months previous to the trial and had appraised two medical buildings in the Ann Arbor area. He also stated that he had conducted

a study in December of 1973 regarding the market for medical buildings in the Genesee County area during February of 1972.

When defendant endeavored to have the witness give more information of his investigation, the trial judge indicated that the witness had made an investigation of the market based on the past records and anything more was unnecessary, except what Mr. Taylor's opinion was as to the value of the property on the date in question. By implication the trial court indicated that there was sufficient factual background by the testimony of Mr. Taylor and the next thing to which he should testify was his expert opinion on the value of the property based on the investigation that he had conducted. The admissibility of such evidence is within the sound discretion of the court, and the exercise of this discretion, unless there is a showing of abuse of discretion, is permissible. *Gaydos v White Motor Corp,* 54 Mich App 143; 220 NW2d 697 (1974). We deem that the court properly ruled that as a matter of fact Mr. Taylor had conducted an investigation into the past records regarding the market of medical buildings during February of 1972. This did not constitute an abuse of discretion. Therefore, the precluding of Mr. Taylor from testifying as to additional matters upon which his opinion was based does not constitute reversible error.

## III

*Does a court possess jurisdiction to set aside a foreclosure sale when the mortgagor-title holder was not a party to the proceeding and the sole ground asserted for setting aside the mortgage sale was the inadequacy of the bid price?*

Defendant bank is asserting that that portion of

the judgment of the trial court setting aside the foreclosure sale if defendant bank elected was erroneous because a foreclosure sale may not be set aside solely because the amount of the bid at the foreclosure sale was inadequate. The leading case in Michigan with respect to this issue is *Cameron v Adams,* 31 Mich 426 (1875). In the *Cameron* case Mr. Justice CAMPBELL wrote at p 429:

> "The inadequacy of price cannot vitiate such a sale, if otherwise fair and regular. The owner of the right of redemption can always redeem within the year by refunding the amount paid, with interest at the rate fixed by the statute. It is only his failure to do this which has been the cause of his loss."

MCLA 600.3140; MSA 27A.3140 permits the mortgagor to redeem the property sold at a foreclosure sale if payment is made within six months from the date of the sale with interest from the time of the sale at the present rate borne by the mortgage. The purpose of the redemption statute is to enable a debtor-mortgagor an opportunity to acquire the funds to reobtain his property and it also serves the function of not permitting the creditor-mortgagee to acquire the property at less than its true value. The theory is that if the creditor-mortgagee bids the property in at the sheriff's sale at an unreasonably low amount, the debtor-mortgagor should not have any great difficulty in obtaining the necessary funds to reacquire the property. Since a debtor-mortgagor can protect himself from an unreasonably low bid by the creditor-mortgagee, this is the reason that the inadequacy of the sale price is not sufficient, in and of itself, to compel the setting aside of a foreclosure sale. *Moss*

*v Keary,* 231 Mich 295; 204 NW 93 (1925), *Postal v Home State Bank for Savings,* 284 Mich 220; 279 NW 488 (1938), and *Macklem v Warren Construction Co,* 343 Mich 334; 72 NW2d 60 (1955).

In its opinion, the trial court provided for a judgment which contained two options for settlement, the election being afforded to the defendant bank. One alternative was that the sale was to be set aside and a new sale conducted, while the other option was for defendant bank to reimburse to the plaintiffs the amount of money that the plaintiffs had paid to defendant bank to redeem the pledged stock.

The trial court, in permitting defendant bank to elect to have the foreclosure sale set aside, committed error with respect to that portion of the judgment. As previously indicated, the inadequacy of the bid price at a sheriff's sale is not sufficient, in and of itself, to authorize a court to set aside a foreclosure sale. Therefore, that portion of the trial court's judgment ordering the foreclosure sale to be set aside because of the inadequacy of the sale price is erroneous.

Notwithstanding the fact that one of the alternatives in the trial court's judgment is erroneous, this cause need not be reversed and a new trial conducted. It is pointed out that whether defendant bank elected option A or option B, the net effect with respect to the plaintiff's reimbursement of the $72,499 plus would be the same. The trial court having found the true value of the property on the date in question to be $440,823.49, defendant bank has been fully repaid and did not have a claim for a deficiency. Not possessing a claim for a deficiency, it would have to return to the plaintiffs the amount of money that they had previously paid to defendant bank. The invalidity of the one

alternative does not impair the validity of the second alternative, and this Court so rules.

IV

*Is MCLA 600.3280; MSA 27A.3280 applicable and does it provide the plaintiffs with a valid claim in the instant case?*

On February 23, 1973, plaintiffs filed an amended complaint adding defendant bank as a party defendant, seeking to recover the amount of money which they had previously paid to redeem the pledged stock, which they redeemed in order to prevent defendant bank from selling the stock to satisfy the deficiency which resulted from the sheriff's sale. In paragraph 9 of their complaint, the plaintiffs alleged:

"That the defendant, Genesee Merchants Bank and Trust Company, in the alternative, is holding funds of the plaintiffs in the amount of $76,165.06 wrongfully and under no claim of right or title thereto, for the reason that the defendant bank in its foreclosure of a certain mortgage and Note, for which stock redeemed by the above fund was pledged, failed to foreclose said mortgage at the fair market value of the real estate and wrongly and capriciously 'bid in' the real estate at far less than the fair market value, contrary to Michigan law, and therefore, have no right or claim to the fund so held by them."

In granting judgment for the plaintiffs, the lower court held that the provisions of MCLA 600.3280; MSA 27A.3280 were applicable and provided the plaintiffs with a valid cause of action. MCLA 600.3280, *supra,* provides in part:

"When, in the foreclosure of a mortgage by advertisement, any sale of real property has been made after

February 11, 1933, * * * and thereafter such mortgagee, * * * shall sue for and undertake to recover a deficiency judgment against the mortgagor, * * * it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of defense and set-off to the extent only of the amount of the plaintiff's claim, that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and such showing shall constitute a defense to such action and shall defeat the deficiency judgment against him, either in whole or in part to such extent."

The express language of the above-cited statute clearly limits its applicability to those cases where the mortgagee undertakes to "recover a deficiency judgment against the mortgagor", and cannot be construed to provide a mortgagor with a claim against a mortgagee for the amount of money which a mortgagor has paid to the mortgagee in order to prevent the mortgagee from satisfying a deficiency out of available additional collateral. Notwithstanding the fact that the above-cited statute is not applicable to provide the plaintiffs with a valid claim against the mortgagee, we rule that under the law of suretyship the plaintiffs do possess a valid claim against defendant bank and are entitled to recover the money they paid to defendant bank in order to redeem the pledged stock.

In 21 Michigan Law & Practice, Suretyship, § 52, p 237, the annotation provides:

"The surety does not lose his rights to require the creditor to resort to property of the principal which is subject to the indebtedness, or to collateral security in his hands before resorting to the surety or any security furnished by him".

and further provides at pp 237–238:

"The surety has a beneficial right or interest in the collateral held by the creditor for the principal debt. It is the duty of the creditor to preserve and enforce such security and dispose of and apply it not only for his own security, but also for the surety's indemnity. The surety may bring an action for damages for negligence or fraud on the part of the creditor in preserving or applying collateral held by him."

In *Hosie v Barbour,* 49 Mich 506; 13 NW 837 (1882), the Michigan Supreme Court, in an opinion written by Mr. Justice COOLEY, held that an accommodation endorser is entitled to have the value of other collateral held by the creditor apply to the indebtedness before the creditor can hold the accommodation endorser liable. In the *Hosie* case, one James T. Hurst owed the defendant $21,000, the indebtedness being secured by a chattel mortgage on lumber owned by James Hurst. Thomas Hurst was an accommodation endorser of the note of James Hurst held by defendant. Defendant proceeded against Thomas Hurst and levied execution on certain real estate owned by Thomas Hurst but which the defendant claimed had been fraudulently conveyed to members of Thomas Hurst's family. James Hurst filed a petition in bankruptcy and the trustees entered into negotiations with defendant in order to satisfy the debt. Defendant was allowed to retain possession of the lumber and James Hurst delivered a note to the defendant for the balance of the debt and plaintiff was an accommodation endorser on this note.

Defendant was successful in obtaining the property previously held by Thomas Hurst, but when the note of James Hurst became uncollectible, the defendant brought an action against plaintiff to recover the balance due. The trial court ordered

defendant to sell the property of Thomas Hurst and to apply the proceeds from this sale in excess of defendant's cost to the indebtedness of James Hurst. On appeal, the decision of the trial court was affirmed. At page 510 of the *Hosie* case, Mr. Justice COOLEY stated: "If the value of the land in Barbour's hands exceeds what it has cost him, then complainant is equitably entitled to have the excess applied on this note."

The Court applied the doctrine of marshaling of assets in order to protect the rights of the accommodation endorser, Hosie. In *The Grand Rapids Savings Bank v Denison,* 92 Mich 418; 52 NW 733 (1892), the principle was once again applied. In the *Grand Rapids* case defendant wife co-signed on a mortgage for the benefit of her husband's business. In addition to the real estate that was mortgaged, defendant's husband turned over to the plaintiff bank a number of notes of his customers as collateral security. When the defendant's husband defaulted on the note and foreclosure proceedings were instituted, the Court held that all the additional collateral must first be exhausted before proceeding against the real estate, of which defendant was a title holder, in order that the interest of the defendant be protected. The Court held that the value of the other collateral, at the time it was taken, was to be deducted from the amount due on the mortgage, before proceeding against the real estate.

Thus, the underlying principles of the above-cited cases can be stated as: (1) that a creditor must, in satisfaction of a debt, proceed against the collateral in such a fashion so as to protect the rights of an accommodation endorser and (2) the value of the collateral used to satisfy the debt is the value at the time that the property was taken.

In the instant case, defendant bank instituted foreclosure proceedings by advertisement against the real estate and bid the property in at $368,324.49. The amount of indebtedness at the date of the sheriff's sale was $440,823.49, which resulted in a deficiency of $72,499. The plaintiffs, as accommodation endorsers, were liable for the deficiency and rather than suffering adverse capital gains consequences, redeemed the pledged stock for the amount due and owing on the note after the sheriff's sale was conducted.

The trial court found that the value of the real estate on the date of the sheriff's sale was $440,823.49, which was the amount due and owing on the obligation. At trial, various employees of defendant bank testified and it appears that the finding by the trial court as to the property's value is correct. Duane Ellsworth, vice president of defendant bank's mortgage department, testified that the bid price of $368,324.49 was arrived at by reducing the amount due and owing, $440,823.49, by one-half of the value of the stock pledged by the plaintiffs. This amount was $72,499. He testified that the "bid-in" figure at the sheriff's sale did not reflect the true value of the property. Ray Atchinson, manager of defendant bank's mortgage servicing department, testified that he sent in the bid price to be $440,823.40. He further stated that the procedure utilized by defendant bank in computing the bid-in price for the sheriff's sale was the first time that he had ever encountered such a procedure in his nine years in the defendant bank's mortgage department. Robert Wisner, executive vice-president of defendant bank, testified that if the stock had not been pledged, the bank would have bid in the property for the amount due and owing at the time of the sheriff's sale. As further evidence of the true value of the property, the

property was assessed for tax purposes at $237,400, which was one-half of the fair market value as determined by the tax assessors. Defendant bank did not challenge nor contest this assessment.

Based on the law as herein stated, it is our opinion that the amended complaint of the plaintiffs did state a valid claim upon which they could recover from the defendant bank. As accommodation endorsers, the plaintiffs were sureties for the obligation. But as sureties, they were entitled to be afforded protection before having the pledged stock used to satisfy the debt. Since the bank chose not to attempt to bid in the property at the fair market value on the date of the sheriff's sale and since the trial court found that the property was worth the entire amount of the indebtedness at the time of the sheriff's sale, no deficiency existed. The absence of a deficiency removed defendant bank's claim against the additional pledge collateral and, therefore, the money it received from the plaintiffs when they redeemed this collateral was wrongfully obtained and the judgment of the trial court was correct. The defendant bank is required to reimburse plaintiffs $72,499 plus costs and interest from the date of redemption of the Jackson National Bank stock as ordered by the trial court.

Affirmed. Costs to plaintiffs.