METROPOLITAN FEDERAL SAVINGS
AND LOAN ASSOCIATION,
Respondent,

v.

John ADAMS and Joyce Adams, Scott
Fridlund and Barbara Ann
Fridlund, Appellants.

No. C4–84–172.

Court of Appeals of Minnesota.

Oct. 16, 1984.

Review Denied Jan. 2, 1985.

R.B. McLarnan, Paul O. Skatvold, Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, for respondent.

Robert H. Swenson, Barry P. Hogan, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, for appellants.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

LESLIE, Judge.

Plaintiff Metropolitan Federal Savings and Loan Association filed two actions to foreclose a mortgage upon defendants' properties. After a consolidated trial without a jury the trial court ordered foreclosure of both properties. Defendants filed a motion for amended conclusions of law which the trial court denied. Defendants appeal from the judgment claiming the trial court erred in applying the law to its defenses. We affirm.

## FACTS

Defendants John Adams, Scott Fridlund, and a third party are general partners in a North Dakota general partnership known as FAMCO. FAMCO operates a North Dakota limited partnership known as Southpark Development Company. Defendants John Adams and Scott Fridlund helped organize the Southpark partnership to build and to develop a multi-unit condominium project in Fargo, North Dakota. All three general partners had experience with some aspect of the condominium project.

To finance development of the project Southpark borrowed $600,000.00 from plaintiff Metropolitan Federal Savings and Loan Association and gave Metropolitan a mortgage on the project.

As construction of the project progressed, Southpark experienced cost overruns. The general contractor filed a notice of intent to file a mechanic's lien in April 1979 for $115,202.27. Southpark's financial problems were complicated by its inability to sell more than two of the completed units, priced at $43,000.00 to $45,000.00. During the next few months Southpark negotiated with its general contractor and

with Metropolitan for additional financing for the project.

At the time of the initial financing Metropolitan appraised the wholesale value of the condominium project at $800,000.00. That appraisal was based on a retail market value of $43,000.00 to $45,000.00 per unit. During refinancing negotiations Metropolitan still used the retail value of $43,000.00 to $45,000.00 per unit to appraise the value of the project at $950,000.00 retail and $800,000.00 wholesale. Metropolitan, however, had little confidence in the $800,000.00 appraised value because sales at the retail price had been so slow.

In December 1979 Southpark by defendants John Adams and Scott Fridlund signed a promissory note for $100,000.00 to Metropolitan. To secure the loan Southpark agreed to give Metropolitan a second mortgage on the largely unsold condominium project. Metropolitan, however, insisted that other collateral be provided for the loan. John Adams, Scott Fridlund, and their wives agreed to list on the mortgage agreement properties near Detroit Lakes, Minnesota, owned separately by each couple. Both couples signed the mortgage. The mortgage contains no special provisions on the individually owned property. The defendants, however, understood that their properties would only be at risk if the project value fell below the loan amounts.

After execution of the financing documents Metropolitan released only $75,000.00 of the $100,000.00 note amount because the third general partner in FAMCO failed to provide an additional $25,000.00 in collateral. Metropolitan then applied part of the loan to pay delinquent interest payments on the first loan and retained further funds to cover interest payments on both loans which the parties expected would not be paid promptly by Southpark. The remaining $35,000.00 was disbursed to contractors. The general contractor later agreed to subordinate its mechanic's lien to the second mortgage on the project.

*Foreclosure action in North Dakota*

In November 1980 Metropolitan gave Adams and Fridlund, as general partners of FAMCO, notice of foreclosure of both mortgages on the Fargo condominium project. The notice named only the Southpark partnership as defendant to the action brought in North Dakota District Court. The complaint did not mention the Minnesota properties but did provide:

> That no proceeding or action has been had at law or otherwise for the recovery of the debt secured by the Mortgages or any part thereof. Plaintiff will not in a later and separate action demand Judgment for any deficiency which may remain due after the sale of the mortgaged premises against any party who is personally liable for the debt secured by the Mortgages.

Southpark defaulted on the foreclosure action. The North Dakota District Court ordered judgment for Metropolitan in the amount of $649,772.13 and ordered sale of the premises. At the sheriff's sale in April 1981 Metropolitan bid $557,911.78, the amount owed on the first mortgage. Southpark later sold its redemptive rights to a third party which redeemed the project.

In June 1981 Metropolitan brought actions in Clay County, Minnesota, against John and Joyce Adams and against Scott and Barbara Ann Fridlund seeking to foreclose the mortgage on the Detroit Lakes, Minnesota, properties securing the second promissory note. After a consolidated trial, the trial court ordered foreclosure of both properties. Defendants then moved for amended conclusions of law. The trial court denied the motion and defendants appeal from the judgment and denial of their motion.

## ISSUES

1. Are defendants entitled to exoneration as gratuitous sureties under North Dakota law?

2. Are defendants' properties exempt from foreclosure under North Dakota's antideficiency judgment statute?

3. Is this action to foreclose on Minnesota property barred when an earlier fore-

closure action on the same mortgage has already been decided in North Dakota?

4. Did plaintiff-mortgagee breach its loan agreement and thereby give defendants a valid defense to its foreclosure action?

5. Is plaintiff estopped from foreclosing on defendants' properties?

## ANALYSIS

The parties agree that this controversy is governed by North Dakota law. Defendants raise five defenses to this foreclosure action.

### 1. Exoneration as Sureties

Defendants argue that by pledging their own property as additional collateral on the loan to Southpark partnership they entered into a surety relationship. Since they received no individual compensation for their action they claim protection under North Dakota law as gratuitous sureties. Metropolitan asserts that defendants are guarantors but, even allowing that they are sureties, North Dakota law does not protect them from this foreclosure action.

*Defendants' status as sureties*

■ A suretyship may be created when a person mortgages property to secure a principal's obligation. *Cross v. Allen,* 141 U.S. 528, 535, 12 S.Ct. 67, 70, 35 L.Ed. 843 (1891); *Clindinin v. Graham,* 224 Iowa 142, 275 N.W. 475 (1937); 55 Am.Jur.2d *Mortgages* § 147 (1971). No consideration separate from that given the principal is needed to support the mortgage. *Id. Compare Baker v. Citizens State Bank of St. Louis Park,* 349 N.W.2d 552 (Minn. 1984).

Sureties are defined in N.D.Cent.Code § 22–03–01 (1978):

A surety is one who, at the request of another and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person or hypothecates property as security therefore.

The North Dakota Supreme Court has provided the following definition of a guarantor's contract:

"The contract of a guarantor is his own separate contract. It is in the nature of a warranty by him that the thing guaranteed to be done by the principal shall be done, and not merely an engagement jointly with the principal to do the thing. * * * [Citations omitted.] A liability such as this, although it may result in requiring a guarantor to pay the note, is not predicated upon the 'terms of the instrument,' but upon a contract entirely separate and distinct."

*Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640, 643 (N.D.1980), *quoting, Northern State Bank of Grand Forks v. Bellamy,* 19 N.D. 509, 125 N.W. 888, 890 (1910) (citations omitted in original).

■ Defendants' "hypothecation" of their properties as security for the Southpark's performance fits squarely within the statutory definition of a surety. Their action fits less well with the definition of a guarantor. No separate and distinct contract has been shown through the documents presented at trial. The only testimony showed defendants believed recourse to their property would be made only after the condominium project value had been exhausted. Defendants' liability appears predicated on the terms of the mortgage instrument. Accordingly we find they are sureties for Southpark's obligation on the second note and mortgage.

■ Defendants further claim that they are entitled to special protections reserved for gratuitous sureties under North Dakota law. Gratuitous sureties are "favorites of the law" in North Dakota. They receive special protections no longer given to compensated sureties. *Watkins Products Inc. v. Anhorn,* 193 N.W.2d 228, 234 (N.D.1971). Those protections include strictly construing the scope of a surety's burdens. *Id.* at 235. This protection will not be given to sureties who, although not directly compensated, have "a definite interest" in the principal's finances. *Hettinger County v. Trousdale,* 72 N.D. 203, 5

N.W.2d 417, 421–22 (1942) (bank president and bank cashier not entitled to special protection as sureties for bank). While none of the defendants were directly compensated in this case each couple had a definite personal interest in the financial success of the Southpark partnership. Accordingly defendants are not entitled to protection as gratuitous sureties.

### Exoneration

Defendants argue that they have been prejudiced by Metropolitan's bidding of only the amount due on the first mortgage note when the condominium project was allegedly worth more than the amount of both mortgage notes combined. They claim that action extinguished defendants' right to redeem the second mortgage on the condominium project thus subrogating into the second mortgage position and gaining priority over the Southpark partnership's redemption rights.

We note that defendants could have paid the note prior to the foreclosure thereby assuming Metropolitan's position as mortgagee on the second mortgage. *See Thurston v. Osborne-McMillan Elevator Co.,* 13 N.D. 508, 101 N.W. 892 (1904). A surety's right to reimbursement by the principal is codified in N.D.Cent.Code § 22–03–10. Defendants might also have exercised that right by intervening in the North Dakota action and paying the amount of the note. Defendants did not take those actions.

■ The hinge for defendant's argument is Metropolitan's breach of a duty to bid more than it did at the sheriff's sale. Generally, mortgage law imposes no duty upon a mortgagee to bid the market value of property. *See Chabut v. Chabut,* 66 Mich. App. 440, 239 N.W.2d 401, 405 (1976); *Guidarelli v. Lazaretti,* 305 Minn. 551, 553, 233 N.W.2d 890, 891 (1975); G. Osborne, G. Nelson & D. Whitman, Real Estate Finance Law § 7.16 (1979). Defendants assert the duty arises from surety law.

■ North Dakota Century Code § 22–03–13 (1978) provides:

Whenever property of a surety is hypothecated with the property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation.

This statute makes clear Metropolitan's duty to foreclose Southpark's property first, which it did, but says nothing about a duty to bid any specific amount.

The North Dakota Century Code also provides that a surety is exonerated by any one of the following methods:

1. In like manner with a guarantor;
2. By performance of the principal obligation or tender of such performance duly made as provided in this code;
3. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or
4. To the extent to which he is prejudiced by an omission of the creditor to do anything when required by the surety which it is his duty to do.

N.D. Century Code § 22–03–06 (1978).

■ Method four above indicates breach of any duty owed to the surety results in exoneration. This method, however, creates no new duty. It simply explains the effect of a breach. Since mortgage law places no such duty upon a mortgagee and since defendants have identified no other source of a duty, they are not exonerated under this method.

■ Method three creates a duty upon creditors. Conceivably it could extend to bidding a certain price at a foreclosure sale. *See Chabut v. Chabut,* 66 Mich.App. 440, 239 N.W.2d 401. Even assuming that North Dakota law recognizes such a duty, it could exist only when exercising it would not injure the creditor's security. *See Bottineau County Bank v. Stafford,* 49 N.D. 942, 194 N.W. 393 (1923).

■ Here the testimony indicated that Metropolitan did not believe the condominium project had sufficient value to secure both promissory notes at the time of

foreclosure. That opinion is consistent with Metropolitan's demand for additional security before it advanced additional funds to Southpark. While defendants argue Metropolitan's appraisals show a substantially higher value, testimony also showed Metropolitan could not justifiably rely upon those appraisals.

At this point we reach a problem recurring in several of defendants' arguments. The value of the condominium project is a question of fact upon which the evidence conflicted. A finding that the project was worth substantially more than the amount bid is essential to this defense. The trial court, however, made no finding on the value of the project, apparently because value is not an element in a prima facie case for foreclosure. The absence of that finding undermines defendants' arguments, particularly when defendants made no motion for specific findings or for a new trial. Their appeal is from the judgment.[1]

The failure to make findings should be raised before the trial court, and cannot be raised first on appeal. *Nelson v. Nelson,* 291 Minn. 496, 189 N.W.2d 413 (1971). On appeal from a judgment the absence of findings cannot be reviewed unless the absence was brought to the trial court's attention in a motion for a new trial or amended findings. *Antonson v. Ekvall,* 289 Minn. 536, 539, 186 N.W.2d 187, 189–90 (1971). The failure to move for amended findings or a new trial, however, does not bar an appellate court from examining whether evidence sustains findings and findings sustain conclusions of law on appeal from a judgment. *Roberson v. Roberson,* 296 Minn. 476, 206 N.W.2d 347 (1973); *Cool v. Hubbard,* 293 Minn. 349, 199 N.W.2d 510 (1972).

■■■ Here the evidence sustains the findings that were made and those findings

support the conclusions of law. We will not remand this matter for a finding when defendants have not requested a new trial or amended findings below or on appeal. We also cannot assume facts not found by the trial court as defendants apparently request. Accordingly we hold that Metropolitan's bid of only the amount due on the first mortgage did not exonerate defendants' obligation as surety for the second mortgage.

### 2. Protection under the Antideficiency Statute

Defendants argue that North Dakota's antideficiency statute precludes this action to foreclose their properties after Metropolitan foreclosed the first mortgage against the condominium project.

■■■ States have passed a wide variety of statutes limiting the ability of creditors to obtain deficiency judgments. G. Osborne, G. Nelson and D. Whitman, Real Estate Finance Law § 8.3. Deficiency judgments may be obtained under North Dakota law, but only by foreclosing by action and following the procedures set out in N.D.Cent.Code §§ 32–19–06 and 32–19–07 (1978). *First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857 (N.D. 1974). This action and the first foreclosure action were brought under the North Dakota Short-Term Mortgage Redemption Act which precludes deficiency judgments. N.D.Cent.Code § 32–19.1–07 (1978). The issue is whether this action is for a deficiency judgment.

■■■ North Dakota's statutory regulation of deficiency judgments presumes that deficiency judgments arise from personal liability. North Dakota Century Code § 32–19–06 provides in part:

---

1. In their notice of appeal defendants purport to appeal from the judgment, from the order denying the motion for amendment of conclusions of law, from the findings of fact, conclusions of law, order for foreclosure and memorandum, and from an oral order denying their motion for summary judgment. Of these decisions only the judgment is appealable. Minn.R.Civ.App.P. 103.03. *See* 3 Minnesota Practice: Rules of Appellate Procedure Annotated, Rule 103 at 276 (J. Hetland & O. Anderson 1970). Since defendants moved for amended conclusions of law, we may review the order denying that motion on appeal from the judgment. Minn.R.Civ.App.P. 103.04(2).

Where a note or other obligation and a mortgage upon real property have been given to secure a debt * * * and the sale of the mortgaged premises has failed to satisfy in full the sum adjudicated to be due and the costs of the action, the plaintiff may, in a separate action, ask for a deficiency judgment, if he has so indicated in his complaint, against the *party or parties personally liable for that part of the debt* * * *

(Emphasis added). *See also First State Bank of Cooperstown v. Ihringer*, 217 N.W.2d 857, 862; N.D.Cent.Code § 32–19–03.

In this case the defendants did not assume personal liability for the mortgage note but only pledged their property as security for the debt. Since they are not personally liable the antideficiency statute does not apply to preclude this foreclosure action.

### 3. Preclusion of Second Foreclosure Action

Defendants allege that Metropolitan's action to foreclose their property is barred by res judicata or principles of finality. Defendants cite no cases for support. Metropolitan contends it has foreclosed the properties in the only way it could, through two separate actions.

■■■ It is not necessary to discuss the elements of res judicata here for it does not apply. Except in unusual cases a court does not have the power to foreclose land not within its territorial jurisdiction. 55 Am.Jur.2d *Mortgages* § 561. Foreclosure proceedings are in rem, making jurisdiction dependent upon presence of the land within the state. *Syver v. Hahn*, 6 Wis.2d 154, 94 N.W.2d 161 (1959). Accordingly foreclosure of the land in North Dakota does not preclude the later action in Minnesota to foreclose defendants' properties. *See Widmann v. Hammack*, 110 Wash. 77, 187 P. 1091 (1920).

### 4. Breach of the loan agreement

■■■ Defendants argue, again without citing any authority, that Metropolitan breached its loan agreement with their principal by not disbursing $75,000.00 in funds to subcontractors. Accordingly they allege they are not liable for the amount due on the second mortgage note. Metropolitan's brief ignores this argument.

Defendants argue that Metropolitan's method of disbursing funds breached the second mortgage note agreement. The testimony at trial conflicted on the disbursement terms. The trial court, however, made no findings of fact on that issue. Since those terms are necessary for defendants to prove their breach of contract defense, their argument suffers the same flaw as their surety argument above in part 1 of this opinion. Accordingly this defense also fails.

### 5. Equitable Estoppel

■■■ The fifth defense defendants raise is equitable estoppel. The elements of equitable estoppel are codified in N.D.Cent. Code § 31–11–06 (1978);

When a party, by his own declaration, act or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

*See also Farmers Cooperative Association of Churchs Ferry*, 239 N.W.2d 808 (N.D.1976).

Defendants' claim that Metropolitan should be estopped by three representations: that the $75,000.00 loan would be paid to subcontractors, that the mortgage on their properties would not be foreclosed until the value of the condominium was exhausted, and that the value of the condominium was sufficient to cover both promissory notes.

Again, facts necessary for this defense were not found. First, the trial court did not find that Metropolitan represented it would pay all funds to the subcontractors. Defendants' second basis for estoppel relies upon a finding that the value of the condominium substantially exceeded the

amount bid at the North Dakota foreclosure sale. As discussed in part 1 of this opinion, that fact was not found by the trial court. Similarly, the trial court did not find Metropolitan made any representation that the value of the project was sufficient to cover both promissory notes. Thus, we find no basis for applying equitable estoppel in this case.

### DECISION

Defendants were not exonerated by plaintiffs' foreclosure of North Dakota property nor is their property protected from foreclosure by the antideficiency statute. Plaintiffs are not precluded by res judicata from bringing a foreclosure action by its earlier foreclosure of property in another state. Defendants' claimed defenses of breach of contract and equitable estoppel are not supported by the trial court's findings.

Affirmed.