COMERICA BANK v COHEN

Docket No. 293327. Submitted October 12, 2010, at Detroit. Decided
    October 21, 2010. Approved for publication December 2, 2010, at
    9:10 a.m.

Comerica Bank brought suit in the Oakland Circuit Court, seeking to
    enforce a limited loan guaranty against the guarantor, Walter
    Cohen. Defendant had signed the guaranty as part of a real estate
    loan transaction between plaintiff and the company defendant
    managed, 21 Century Arizona Monteil LLC. After plaintiff de-
    manded payment on the loan and the borrower failed to pay,
    plaintiff sent the borrower notice of default and then filed suit.
    The court, Lisa O. Gorcyca, J., granted plaintiff's motion for
    summary disposition, finding the terms of the guaranty were
    unambiguous and did not allow defendant's obligation to be
    satisfied by a partial payment from the borrower pursuant to a
    prospective sale of the property. The court also found that even if
    the property were sold, that would not reduce defendant's liability
    under the guaranty because under its terms defendant would be
    released from liability only upon payment in full of his guaranteed
    percentage of the loan. Defendant appealed.

The Court of Appeals *held*:

1. A guaranty of payment is absolute while a guaranty of
collection is conditional and becomes fixed only if the creditor
exercises reasonable diligence in collecting from the principal
debtor. According to the unambiguous terms of the guaranty,
Cohen unconditionally guaranteed payment of 30 percent of the
outstanding indebtedness owed by 21 Century at any time, payable
on demand if the borrower failed to pay the principal or interest on
the loan. The terms also unambiguously stated that plaintiff had
no obligation to perfect its lien on the property or to secure
payment of the indebtedness and that defendant waived any right
to require plaintiff to do so. Even if the property had been sold or
foreclosed, the evidence showed that the money this would gener-
ate would not result in plaintiff recovering more than 100 percent
of the indebtedness after defendant paid in full.

2. In a case in which the guarantor is entitled to notice, a failure
to give notice of the principal's default does not discharge the

guarantor unless the guarantor has actual loss or damages, and then only the amount of loss or damage is discharged. Defendant was not relieved of his obligation under the guaranty due to lack of notice. The unambiguous terms of the guaranty provided that, other than any notice rights provided by the loan agreement itself, defendant waived notice of default and notice to accelerate or demand payment, and the loan agreement contained no provisions for notice to the guarantor. Even if he were entitled to notice and was not given notice, he did not claim that he suffered damages from the lack of notice.

3. Although summary disposition under MCR 2.116(C)(10) is usually not properly granted until the parties have had a chance for discovery, it may be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position. The meaning of the guaranty was clear on its face and discovery was not needed to discern the parties' intent. The trial court properly granted summary disposition without allowing further discovery.

Affirmed.

1. CONTRACTS — GUARANTY CONTRACTS — GUARANTY OF PAYMENT.

A guaranty of payment is absolute while a guaranty of collection is conditional and becomes fixed only if the creditor exercises reasonable diligence in collecting from the principal debtor; when the unambiguous terms of a guaranty unconditionally guarantee payment, the creditor has no obligation to the guarantor to attempt to enforce the loan terms against the borrower.

2. CONTRACTS — GUARANTY CONTRACTS — NOTICE TO GUARANTOR.

In a case in which the guarantor is entitled to notice, a failure to give notice of the principal's default does not discharge the guarantor unless the guarantor has actual loss or damages, and then only the amount of loss or damage is discharged.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Steven A. Roach* and *Douglas W. Eyre*), for plaintiff.

*Honigman Miller Schwartz and Cohn LLP* (by *Mark A. Stern* and *Jill M. Przybylski*) for defendant.

Before: MURRAY, P.J., and K. F. KELLY and DONOFRIO, JJ.

Per Curiam. Defendant, Walter Cohen, appeals as of right a judgment entered in favor of plaintiff, Comerica Bank, in this contract dispute. On appeal, defendant challenges the circuit court's order granting plaintiff's motion for summary disposition plaintiff. We affirm.

## I. FACTS

As noted in the preceding paragraph, this is a contract dispute. On August 1, 2006, plaintiff and 21 Century Arizona Monteil LLC, entered into a loan agreement. The agreement specified that defendant, manager of 21 Century, was the guarantor. The agreement further specified that the term "loan" referred to "an equity loan in the amount of $226,750 . . . and an acquisition and renovation loan in the amount of $10,640,000." The maturity date was February 1, 2009.

Pursuant to ¶ 6.1(a) of the loan agreement, an event of default is, inter alia:

> If a Borrower shall fail to pay the principal of and/or interest on the Loan or if a Borrower shall fail to pay any other monetary obligation as provided for in this Agreement or under any other Loan Document, and in any such case, any such failure shall continue for a period of five (5) days after written notice thereof shall have been given to Borrower by Lender.

The notice provision, ¶ 8.3, states:

> Any notice, demand, request or other instrument which may be or is required to be given under this Agreement shall be given to the parties at their addresses appearing on the cover page hereof. . . . A copy of any default notices sent to Borrower shall also be sent to Borrower's attorney:
>
> Gregory J. DeMars, Esq.
>
> Honigman Miller Schwartz and Cohn LLP . . . .

Also on August 1, 2006, defendant executed a limited guaranty, which first stated:

> As of August 1, 2006 the undersigned . . . unconditionally and absolutely guarantee(s) to [plaintiff] . . . payment when due, whether by stated maturity, demand, acceleration or otherwise, of all existing and future indebtedness to [plaintiff] of 21 Century . . . arising under that certain Floating Non-Revolving Eurodollar Note, in the principal amount of $10,640,000 . . . .

Interest and costs of collection were also included in the guarantor's obligation pursuant to ¶ 1. Paragraph 2 of the limited guaranty specified, "This is a continuing Guaranty of payment and not of collection and remains effective whether the Indebtedness is from time to time reduced and later readvanced or entirely extinguished and later reincurred."

In addition, ¶ 7 of the limited guaranty provides, "The undersigned waive(s) any right to require the Bank to (a) proceed against Borrower, any property or collateral . . . or (c) pursue any other remedy in the Bank's power." Finally, ¶ 13(a) of the limited guaranty specifies that

> [n]otwithstanding anything to the contrary contained herein, the obligations of the Guarantor hereunder shall be limited to 30% of the indebtedness outstanding from time to time under the Note, the Loan Agreement and/or the Loan Documents and 100% of the indebtedness outstanding from time to time under the Equity Note plus interest thereon and the cost of collection thereof. Upon payment in full of its percentage share (as set forth above), Guarantor shall be released from liability hereunder . . . .

On February 3, 2009, plaintiff filed a complaint alleging that 21 Century defaulted on the loan.[1] Plaintiff demanded payment in a letter dated December 31,

---

[1] As noted, the loan's maturity date was February 1, 2009.

2008; however, defendant and 21 Century failed to pay. Thus, plaintiff asserted that, pursuant to the guaranty, defendant was required to pay a portion of 21 Century's outstanding indebtedness, which amounted to $8,379,173.89 in principal and $165,610.67 in interest, as of January 30, 2009. Plaintiff requested that it be granted judgment against defendant in the amount of $2,513,752.19 in principal and $49,683.20 in accrued interest.

Defendant filed an answer on March 24, 2009, asserting, first, that plaintiff failed to mitigate its alleged damages by not approving a proposed sale of the property. Second, plaintiff failed to give proper notice of default to defendant's attorney under the terms of the loan agreement and note, and therefore, neither 21 Century nor defendant was in default. Third, since defendant's guaranty was limited to a portion of the debt, defendant's obligation would be satisfied by the sale and proceeds from a proposed sale of the real estate collateral.

On April 22, 2009, plaintiff filed a motion for summary disposition pursuant to MCR 2.116(C)(10). The trial court held a hearing on plaintiff's motion on May 27, 2009, and on June 2, 2009, the trial court entered an opinion and order granting plaintiff's motion for summary disposition. The court first stated that the terms of the guaranty were clear and unambiguous, and therefore, the court found "no merit in Defendant's contention that his obligation under the Guaranty would be satisfied by partial payment by the Borrower pursuant to a prospective sale of the Condominium Project securing the Note." The court further ruled:

> In any case, acceleration of the indebtedness owed under the Note is not material: the Note matured and was due and payable in full on February 1, 2009. If Plaintiff

receives any amount from a sale of the Condominium Project, that amount will not reduce the liability owed by Defendant under the Guaranty. Indeed, the Guaranty is an independent obligation owed by Defendant to Plaintiff. The Guaranty provides at ¶ 13(a): "Upon payment in full of its percentage share ... Guarantor shall be released from liability hereunder."

Judgment for plaintiff was entered on July 9, 2009, and this appeal ensued.

## II. ANALYSIS

Defendant first argues that the trial court erred in granting summary disposition to plaintiff because the court improperly interpreted the limited guaranty at issue.

Plaintiff brought its motion for summary disposition pursuant to MCR 2.116(C)(10). "This Court reviews de novo a trial court's decision on a motion for summary disposition." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). This Court reviews

a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. [*Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).]

"There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving

party." *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). In addition, "[t]he construction and interpretation of a contract present questions of law that we review de novo." *Saint Clair Medical, PC v Borgiel*, 270 Mich App 260, 264; 715 NW2d 914 (2006).

"Contracts of guaranty are to be construed like other contracts, and the intent of the parties, as collected from the whole instrument and the subject-matter to which it applies, is to govern." *First Nat'l Bank v Redford Chevrolet Co*, 270 Mich 116, 121; 258 NW 221 (1935) (quotation marks and citation omitted). When interpreting a contract,

> if contractual language is clear, construction of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. The language of a contract should be given its ordinary and plain meaning. [*Meagher v Wayne State Univ*, 222 Mich App 700, 721-722; 565 NW2d 401 (1997) (citations omitted).]

In addition,

> a contract is to be construed as a whole; . . . all its parts are to be harmonized so far as reasonably possible; . . . every word in it is to be given effect, if possible; and . . . no part is to be taken as eliminated or stricken by some other part unless such a result is fairly inescapable. [*Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339, 358; 764 NW2d 304 (2009) (quotation marks and citation omitted).]

It should also be noted that

> a guaranty contract—like a surety contract—is a special kind of contract. . . . The undertaking of a surety is to

> receive a strict interpretation. The surety has a right to stand on the very terms of the contract. . . . A surety cannot be held beyond the precise terms of his agreement. [*Bandit Indus, Inc v Hobbs Int'l, Inc (After Remand)*, 463 Mich 504, 511-512; 620 NW2d 531 (2001) (quotation marks and citations omitted).]

Nevertheless,

> [t]he main distinction between a contract of suretyship and of guaranty . . . is that while the surety assumes liability as a regular party to the primary undertaking, the guarantor does not, as his or her liability depends on *an independent collateral agreement* by which he or she undertakes to pay the obligation if the primary payor fails to do so. [*Id.* at 507-508 n 4 (emphasis added, quotation marks and citation omitted).]

Defendant argues that the trial court's finding—that defendant does not receive credit for any outside payment that is made in satisfaction of the indebtedness, and that, absent defendant's personal payment of the full 30 percent share, defendant will not be released from the guaranty—is illogical. According to defendant, the trial court's interpretation could be supported only by adding the bracketed words to the guaranty: "Upon payment in full of its percentage share (as set forth above) [by guarantor], Guarantor shall be released from liability hereunder," and this interpretation violates the basic principle of contract law that courts are not permitted to rewrite contracts by adding additional terms. In addition, defendant argues that, pursuant to *Chabut v Chabut*, 66 Mich App 440; 239 NW2d 401 (1976), plaintiff was required to foreclose on the condominium project before collecting on the guaranty, and furthermore, requiring foreclosure is a fair construction of the guaranty, as evidenced by the language of ¶ 13(a). Similarly, according to defendant, there is nothing in the guaranty that relieves plaintiff of its legal obligation to mitigate damages.

The plain language of the limited guarantee forecloses defendant's arguments. As noted in part I of this opinion, the agreement specified that defendant was the guarantor, and the limited guaranty clearly states the unconditional obligation undertaken by defendant:

> As of August 1, 2006 the undersigned . . . *unconditionally and absolutely gurantee(s)* to [plaintiff] . . . *payment when due, whether by stated maturity, demand, acceleration or otherwise*, of all existing and future indebtedness to [plaintiff] of 21 Century . . . arising under that certain Floating Non-Revolving Eurodollar Note, in the principal amount of $10,640,000 . . . . [Emphasis added.]

Paragraph 2 of the limited guaranty further specified, "*This is a continuing Guaranty of payment and not of collection* . . . ." Such a guaranty of *payment* is absolute under the terms of the contract and settled case law. *Bastian Bros Co v Brown*, 293 Mich 242, 248; 291 NW 644 (1940). It is a guaranty of *collection*, not applicable here, that "is conditional and becomes fixed only if the creditor exercises reasonable diligence in collecting from the principal debtor. Reasonable diligence in cases of guaranties of collection demands that, unless there are mitigating circumstances, the creditor prosecute to judgment and return of execution thereof unsatisfied." *Id.* at 248-249 (citations omitted).

The unconditional nature of defendant's obligation is further clarified by ¶¶ 4 and 7 of the guaranty. Paragraph 4 states in relevant part:

> The undersigned agree(s) that *no security now or later held by the Bank for the payment of the Indebtedness*, whether from the Borrower, any guarantor, or otherwise, and whether in the nature of a security interest, pledge, lien, assignment, setoff, suretyship, guaranty, indemnity, insurance or otherwise, *shall affect in any manner the unconditional obligation of the undersigned under this*

> *Guaranty.* The undersigned acknowledge(s) and agree(s)
> that *the Bank has no obligation to acquire or perfect any
> lien on or security interest in any asset(s), whether realty or
> personalty, to secure payment of the Indebtedness,* and the
> undersigned is (are) not relying upon any asset(s) in which
> the Bank has or may have a lien or security interest for
> payment of the Indebtedness. [Emphasis added.]

And, pursuant to ¶ 7 of the agreement, defendant
*"waive(s) any right to require the Bank to: (a) proceed
against Borrower, any property or collateral . . .* or (c)
pursue any other remedy in the Bank's power." Finally,
¶ 13(a) of the guaranty details defendant's specific
obligation:

> Notwithstanding anything to the contrary contained
> herein, *the obligations of the Guarantor hereunder shall be
> limited to 30% of the indebtedness* outstanding from time to
> time under the Note, the Loan Agreement and/or the Loan
> Documents and 100% of the indebtedness outstanding
> from time to time under the Equity Note plus interest
> thereon and the cost of collection thereof. *Upon payment in
> full of its percentage share (as set forth above), Guarantor
> shall be released from liability hereunder . . . .*" [Emphasis
> added.]

Thus, by the plain language of the guaranty, defen-
dant unconditionally and absolutely agreed to pay 30
percent of the indebtedness and plaintiff was not re-
quired to foreclose on the real estate or proceed against
other collateral before seeking payment from defen-
dant. Furthermore, even if plaintiff *did* collect money
through foreclosure, plaintiff would not be required to
offset those funds against the money due from defen-
dant unless the payment by defendant would result in
recovery of more than 100 percent of the indebtedness.
See *Jim-Bob, Inc v Mehling,* 178 Mich App 71, 92; 443
NW2d 451 (1989) ("[A] plaintiff may simultaneously

pursue all of his remedies . . . *so long as plaintiff is not awarded double recovery.*") (quotation marks and citation omitted).

Although defendant relies on *Chabut* to support his position that plaintiff was first required to foreclose on the real estate, *Chabut* addressed a suretyship, which, as explained in *Bandit Indus*, 463 Mich at 507 n 4, is not the same thing as a contract of guaranty. Therefore, *Chabut*'s holding that "a creditor must, in satisfaction of a debt, proceed against the collateral in such a fashion so as to protect the rights of an accommodation endorser" is inapplicable. *Chabut*, 66 Mich App at 453.[2] Additionally, applying the holding in *Chabut* to this case would cause a conflict with the agreed-upon language in ¶¶ 4 and 7.

Furthermore, while it is true that, "[i]n both contract and tort actions, an injured party must make every reasonable effort to minimize damages," *Bak v Citizens Ins Co*, 199 Mich App 730, 736; 503 NW2d 94 (1993), by defendant's own admission, the alleged proposed sale of the real estate[3] would have garnered slightly less than

---

[2] Defendant also repeats his argument that plaintiff was required to foreclose on the real estate by couching it in terms of mitigation of damages. Defendant cites *First Macomb Mtg Co v Schwartz*, unpublished opinion per curiam of the Court of Appeals, issued August 5, 1997 (Docket Nos. 173988 and 176208), for the proposition that plaintiff was required to mitigate damages. However, "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis." MCR 7.215(C)(1). Furthermore, *First Macomb* dealt with a situation where the plaintiff bank "was aware that the property was steadily declining in value through its inspections of the property yet did not notify [defendant guarantor] of the destruction and waste of the residence until over a year after it was known to [the bank]." *First Macomb*, unpub op at 1. Such a situation is not present here.

[3] Defendant alleges that plaintiff refused to consider the proposed sale of the real estate, while plaintiff states, "the sale failed to close because the prospective purchaser could not obtain financing for the purchase . . . and not because of any action or inaction by [plaintiff]."

70 percent of the total indebtedness. Therefore, there would still have been 30 percent of the indebtedness remaining, which, as has been discussed, happens to equal the amount that defendant owes under the guaranty. Regardless, as stated above, pursuant to the guaranty defendant's obligation is an absolute guaranty of payment and plaintiff was not required to foreclose on the real estate before proceeding against defendant. *Bastian Bros Co*, 293 Mich at 248.

Defendant next argues that the trial court erred in granting summary disposition when there was no default under the loan agreement at the time the complaint was filed. Specifically, defendant argues that, while plaintiff sent 21 Century a notice of default dated December 31, 2008, it did not send a copy of the notice of default to the company's attorney at the time. Instead, plaintiff sent a copy of the notice to the attorney on or about April 3, 2009, which was after plaintiff filed the lawsuit on February 3, 2009. Defendant thus concludes that, when plaintiff filed this action, there was no payment default under the loan agreement and no default under the limited guaranty on which this case is based. Again, defendant's argument cannot prevail in light of the contract language.

Pursuant to ¶ 6.1 of the loan agreement, an event of default is defined as:

> (a) If a Borrower shall fail to pay the principal of and/or interest on the Loan or if a Borrower shall fail to pay any other monetary obligation as provided for in this Agreement or under any other Loan Document, and in any such case, any such failure shall continue for a period of five (5) days after written notice thereof shall have been given to Borrower by Lender.

* * *

(l) If a Borrower or any Guarantor shall repudiate, terminate or revoke . . . any obligation to the Lender under a Loan Document.

According to ¶ 6.2(b), if an event of default occurs, plaintiff is entitled to "declare the entire outstanding principal balance of the Loan . . . together with all interest thereon, to be due and payable immediately." Further, ¶ 6.3 states:

[F]rom and after the occurrence of any Event of Default under this Agreement or any event which automatically causes the indebtedness outstanding hereunder to become immediately due and payable, notwithstanding anything to the contrary in this Agreement, said indebtedness shall bear interest at the per annum rate of three (3) percentage points above the otherwise effective interest rate.

Paragraph 8.3, the notice provision of the loan agreement, states:

Any notice, demand, request or other instrument which may be or is required to be given under this Agreement shall be given to the parties at their addresses appearing on the cover page hereof. . . . *A copy of any default notices sent to Borrower shall also be sent to Borrower's attorney:*

*Gregory J. DeMars, Esq.*

*Honigman Miller Schwartz and Cohn LLP* . . . . [Emphasis added.]

The corresponding notice provision in the guaranty, ¶ 7, states, "Except as to any applicable notice . . . rights set forth in the Loan Documents, the undersigned waive(s) notice of . . . default, notice of intent to accelerate or demand payment of the Indebtedness . . . ."

First, whether lack of proper notice to 21 Century's attorney meant the loan was not actually in default on December 31, 2008, does not, as plaintiff asserts, affect

defendant's obligation. The loan was due on February 1, 2009, and was not paid. The complaint was filed on February 3, 2009. As stated in the guaranty, defendant "unconditionally and absolutely guarantee(s) to [plaintiff] . . . payment when due, *whether by stated maturity*, demand, acceleration or otherwise, of all existing and future indebtedness to [plaintiff] of 21 Century . . . ." Therefore, defendant was not relieved of his obligation under the guaranty and the court did not err in granting summary disposition to plaintiff because of any alleged lack of notice. Second, it is, in any event, not at all clear from the wording of the notice provision that notice to 21 Century is ineffective simply because the attorney was not timely copied. Moreover, the loan agreement does not address notice to the guarantor, and the guaranty agreement indicates that notice to the guarantor is otherwise waived. Defendant does not and cannot dispute that he, personally, received notice of default. The demand letter, in fact, is addressed to defendant in his capacity as both manager of 21 Century and as guarantor. Defendant signed the return receipt for the letter on January 5, 2009.

Further, even if defendant, as guarantor, had not immediately received notice of default, which he clearly did,

[a] failure to give notice of the principal's default or negligence in giving such notice, in a case where the guarantor is entitled to notice, does not of itself discharge him from liability and bar a recovery upon the guaranty; but there must be not only a want of notice within a reasonable time, but also some actual loss or damage thereby caused to the guarantor, and if such loss or damage does not go to the whole amount of the claim, but is only in part, the guarantor is discharged only *pro tanto*. [*Palmer v Schrage*, 258 Mich 560, 570; 242 NW 751 (1932) (quotation marks and citation omitted).]

See also *Piasecki v Fidelity Corp of Mich*, 339 Mich 328, 337; 63 NW2d 671 (1954) ("[T]he guarantor of *payment*, not a party to the original note, cannot complain of laches, or want of notice, unless it has worked to his prejudice . . . .") (quotation marks and citation omitted). Defendant has not claimed that he suffered damages[4] from an alleged lack of notice, and therefore, his obligation under the guaranty is not discharged.

Defendant next argues that the trial court erred in granting summary disposition before the close of discovery. Although a motion brought under MCR 2.116(C)(10) is usually not properly granted until the parties have had a chance for discovery, " 'summary disposition may . . . be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position.' " *Stringwell v Ann Arbor Pub Sch Dist*, 262 Mich App 709, 714; 686 NW2d 825 (2004), quoting *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 25; 672 NW2d 351 (2003).

We reject defendant's argument that granting plaintiff's motion was premature. First, regarding defendant's contention that further discovery would yield evidence regarding the meaning of the guaranty, "[c]ontracts of guaranty are to be construed like other contracts," *First Nat'l Bank*, 270 Mich at 121 (quotation marks and citation omitted), and "[u]nder ordinary contract principles, if contractual language is clear,

---

[4] Plaintiff argues that defendant was not injured by any lack of notice of default prior to the maturity date because the judgment entered in favor of plaintiff included default interest accrued only after maturity of the note on February 1, 2009. The judgment provides that defendant must pay interest accrued through July 7, 2009, in the amount of $82,179.69. Although we are unable to determine from the record which interest rate was charged at which time, defendant does not argue on appeal that the amount of interest was improperly calculated.

construction of the contract is a question of law for the court," *Meagher*, 222 Mich App at 721. For all the reasons stated above, the meaning of the guaranty is clear and unambiguous, and discovery is not needed to uncover evidence regarding the parties' intent. Second, because mitigation of damages, i.e., a foreclosure proceeding, was not required pursuant to the unambiguous terms of the guaranty, discovery was not needed on this issue, either. Finally, regarding lack of notice, as explained above, defendant did receive notice, and even if he did not, he has not claimed that he was prejudiced in any way by any alleged lack of notice, and therefore, he is not relieved of his obligation under the guaranty. Therefore, the trial court did not err in granting plaintiff's motion for summary disposition before the close of discovery.

Affirmed. Plaintiff may tax costs, having prevailed in full. MCR 7.219(A).