# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF HARING,

      Plaintiff-Appellee,

v

CITY OF CADILLAC,

      Defendant,

and

DONALD BOERSMA and GLORIA BOERSMA,

      Defendants-Appellants.

UNPUBLISHED
March 5, 2015

No. 318174 and 318823
Wexford Circuit Court
LC No. 2013-024606-CH

CHARTER TOWNSHIP OF HARING,

      Plaintiff-Appellee,

v

CITY OF CADILLAC,

      Defendant-Appellant,

and

DONALD BOERSMA and GLORIA BOERSMA,

      Defendants.

No. 318175 and 318821
Wexford Circuit Court
LC No. 2013-024606-CH

Before: SAAD, P.J., and OWENS and K. F. KELLY, JJ.

PER CURIAM.

-1-

Defendant City of Cadillac[1] appeals the trial court's order that granted summary disposition to plaintiff Charter Township of Haring[2] pursuant to MCR 2.116(I)(2).[3]  For the reasons stated below, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

This case involves property located in Haring Township.  In the early 2000s, it appeared that population growth near the land would make it more feasible for Cadillac to provide the real estate with public safety and infrastructure services.  Accordingly, Cadillac and Haring Township signed an agreement on May 5, 2003 pursuant to MCL 124.22,[4] which conditionally transferred jurisdiction over the property from the township to the city, so that the city could provide the above mentioned services to the land in question.  The agreement stated that it would terminate on January 31, 2053, at which point the property would "for all purposes be within the jurisdiction of the City."

However, the contract also included a paragraph on "possible early termination and reversion" of the contract, which applied only to a specified area of the transferred land ("the Boersma parcel").[5]  In relevant part, the early termination clause states:

5.3 <u>Possible Early Termination and Reversion</u>: The City and Township agree that special provisions for termination and reversion shall exist on the [Boersma parcel].

For the [Boersma parcel], City water and/or City sewer services must be provided no later than 10 years from the effective date of this agreement.  In the event that City water and/or City sewer services are not provided within the 10 year term provided above, then the real estate described in this paragraph shall be automatically removed from the terms of this agreement and the jurisdiction for such real estate shall immediately revert to the Township.  [Emphasis in original.]

---

[1] Throughout the opinion, we refer to defendant City of Cadillac as either "Cadillac" or "the city."

[2] Throughout the opinion, we refer to the plaintiff as either "Haring Township" or "the township."

[3] Defendants Donald and Gloria Boersma ("the Boersmas") appeal the same order, and our Court has consolidated their appeal with Cadillac's.  See *Charter Twp of Haring v City of Cadillac*, unpublished order of the Court of Appeals, entered October 1, 2013 (Docket Nos. 318174 and 318175); *Charter Twp of Haring v City of Cadillac*, unpublished order of the Court of Appeals, entered November 20, 2013 (Docket Nos. 318174, 318175, 318821 and 318823).

[4] MCL 124.22(1) authorizes "two or more local units" of government to "conditionally transfer property for a period of not more than 50 years for the purpose of an economic development project" by means of "a written contract agreed to by the affected local units."

[5] The specified area is owned by the Boersmas.

As such, if Cadillac failed to provide "City water and/or City sewer services" to the Boersma parcel within ten years of the date of execution of the agreement, the Boersma parcel would revert to Haring Township.[6] The contract does not define "City water and/or City sewer services" with any specificity. It does, however, note in another section on "municipal services" that:

> 1.2 . . . All *municipal services*, including, without limitations, fire and police protection; *sewer, water and refuse collection services*; library, museum and other cultural facilities and services; snow plowing; road maintenance and repair; and other municipal facilities and services shall be provided by the City as if the Transferred Area [which includes the Boersma parcel] *were located in the City*, and the Township shall have no obligation to provide such municipal services and facilities to the Transferred Area or its occupants. [Emphasis added.]

In the years after the parties signed the agreement, Cadillac did not install a sewer pipeline connecting the Boersma parcel to the city's wastewater treatment facility. Instead, Cadillac built sewage pipes and some type of underground, self-contained, sewage-holding structure on the property.[7] The city removes sewage from the holding structure by connecting the structure to a truck, which collects the sewage and transports it to the city's wastewater treatment facility. In its brief on appeal, Cadillac describes this infrastructure and sewage removal arrangement as "Phase 1 of its wastewater system improvements on the [Boersma parcel]," and indicates that it intends to install new wastewater pumps on the property in the future.

Haring Township brought suit against Cadillac on May 6, 2013,[8] and alleged, among other things, that Cadillac breached the contract's early termination clause when it failed to install a sewer system on the Boersma parcel that had a direct connection to Cadillac's wastewater treatment facility. Cadillac moved for summary disposition, and argued that the conditions for early termination had not occurred because it provided "sewage services" to the Boersma parcel. The city noted that the contract only required it to provide "sewage services" to the Boersma parcel—it did not specify the exact fashion in which those "sewage services" were to be provided.

---

[6] Though the early termination clause states that the Boersma parcel would "immediately revert" to Haring Township if Cadillac failed to provide "City water and/or City sewer services" to the parcel within ten years of the date of execution of the agreement, the township was clearly justified in initiating this litigation to regain jurisdiction over the Boersma parcel, because the parties do not agree on whether the events specified in the early termination clause have taken place.

[7] The city describes the installation as a "wet well structure for a submersible pump station," while the township describes it as a concrete containment vessel, suitable for future use as a pump station.

[8] Haring Township joined the Boersmas as necessary party defendants. On appeal, the Boersmas submitted a joint brief with Cadillac.

In a thorough, written opinion, the trial court rejected Cadillac's motion, and determined that the installation on the Boersma parcel was not a "sewer system" as contemplated by the contract or by any common understanding of that term. The court therefore granted Haring Township summary disposition pursuant to MCR 2.116(I)(2). On appeal, Cadillac makes the same arguments as it did at the trial court, and stresses that the trial court did not interpret the contract according to its plain and unambiguous language. Haring Township also makes the same arguments as it did before the trial court, and asks us to affirm the court's holding.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo, and the evidence is viewed in the light most favorable to the nonmoving party. *Joliet v Pitoniak*, 475 Mich 30, 35; 715 NW2d 60 (2006). Issues that involve the proper interpretation of a contract are questions of law, and are also reviewed de novo. *In re Egbert R. Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

## III. ANALYSIS

When a court interprets a contract, its "primary task" is to "give effect to the parties' intention at the time they entered into the contract." *Miller-Davis Co v Ahrens Construction, Inc*, 495 Mich 161, 174; 848 NW2d 95 (2014). "We determine the parties' intent by examining the language of the contract according to its plain and ordinary meaning." *Id.* "[C]ontractual terms must be construed in context and in accordance with their commonly used meanings." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 294; 778 NW2d 275 (2009). "Courts may consult dictionary definitions to ascertain the plain and ordinary meaning of terms undefined in an agreement." *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527–528; 791 NW2d 724 (2010). A contract is to be construed as a whole, and all its parts are to be harmonized so far as reasonably possible. *Comerica Bank v Cohen*, 291 Mich App 40, 46; 805 NW2d 544 (2010).

Here, as noted, the early termination clause specified that jurisdiction over the Boersma parcel would "immediately revert" to Haring Township if Cadillac failed to provide the Boersma parcel with "City water and/or City sewer services" within ten years of the agreement. Neither the early termination clause nor the wider contract define "City sewer services." As such, it is appropriate to consult a dictionary definition of "sewer services" to ascertain the "plain and ordinary meaning" of the term as used in the agreement. *Holland*, 287 Mich App at 527–528.

A "sewer" is defined as "an artificial conduit, usually underground, for carrying off waste water and refuse, as in a town or city." *Webster's Random House Unabridged Dictionary* (1998). "Service" is defined as "an act of helpful activity; help; aid," or, alternatively, as "the supplying or supplier of utilities or commodities, as water, electricity, or gas, required or demanded by the public." *Id.* The presence of the modifier "City" in "City sewer services" indicates that the agreement intends for: (1) Cadillac to provide the sewer services; and (2) the sewer services provided to be similar to those which Cadillac provides to other properties within its jurisdiction.

Cadillac argues that it provided "sewer services" to the Boersma parcel by building the containment structure and hauling away the collected sewage via truck for treatment at its

-4-

wastewater treatment facility, and stresses that the agreement does not obligate it to provide "sewer services" in any particular fashion.[9] However, this reading of "City sewer services" places too much emphasis on "services" and ignores the other two terms in the phrase: "sewer" and "City."

The infrastructure Cadillac installed on the Boersma parcel merely collects sewage in a holding structure, and leaves the sewage on the property. It does not "carry[] off waste water and refuse" to another location—the dictionary definition of what a "sewer" does. *Webster's Random House Unabridged Dictionary* (1998). And the fact that Cadillac planned to upgrade the sewage infrastructure on the Boersma parcel militates against finding that the existing infrastructure satisfies the mandates of the early termination clause, because it indicates that Cadillac believes the existing infrastructure to be inadequate in some way—and perhaps not the "sewer" contemplated by the contract.

Moreover, and dispositively, Cadillac's reading of the agreement ignores the term "City," which modifies "sewer services." Again, paragraph 1.2 of the contract[10] reads:

1.2 . . . All *municipal services*, including, without limitations, fire and police protection; *sewer, water and refuse collection services*; library, museum and other cultural facilities and services; snow plowing; road maintenance and repair; and other municipal facilities and services shall be provided by the City as if the Transferred Area [which includes the Boersma parcel] *were located in the City*, and the Township shall have no obligation to provide such municipal services and facilities to the Transferred Area or its occupants. [Emphasis added.]

---

[9] To support its contention that sewage-removal-by-truck is a "sewer service" under the contract, Cadillac points to a section of the Natural Resources Environmental Protection Act, MCL 324.4101(h), which defines "sewerage system" as:

a system of pipes and structures including pipes, channels, conduits, manholes, pumping stations, sewage or waste treatment works, diversion and regulatory devices, outfall structures, and appurtenances, collectively or severally, actually used or intended for use by the public for the purpose of collecting, conveying, transporting, treating, or otherwise handling sanitary sewage or other industrial liquid wastes that are capable of adversely affecting the public health.

Cadillac unconvincingly argues that, under the NREPA, "the key component of a sewerage system is not the method of transmission, but the underlying objective: 'collecting, conveying, transporting, treating, or otherwise handling sanitary sewage.'" As the trial court correctly noted, in the context of the NREPA, this definition simply lists different components of which a "sewerage system" can be comprised and is not relevant to the interpretation of the contract at issue in this case.

[10] As noted, a contract is to be construed as a whole, and all its parts are to be harmonized so far as reasonably possible. *Comerica Bank*, 291 Mich App at 46.

The phrase "municipal services . . . shall be provided by the City as if the Transferred Area were located in the City" belies Cadillac's argument that the contract (and the early termination clause) did not require the city to provide a certain kind of "sewer services" to the Boersma parcel. The agreement required Cadillac to provide the real estate with "City sewer services"—i.e., the sort of sewer services provided by Cadillac to other properties within its jurisdiction.

As Haring Township notes, the "sewer services" Cadillac provides the Boersma parcel are quite different (and of lower quality) than those it provides to most other properties within its jurisdiction. The Boersma parcel's sewage is transported off the property by truck—unlike all other properties in Cadillac serviced by the city, which possess sewer pipes that remove sewage from the property and that are linked to the wastewater treatment plant.[11] As such, Cadillac did not provide "*City* sewer services" to the Boersma parcel, in that the parcel did not receive "sewer services" in the fashion that Cadillac normally provides them, as required by paragraph 1.2 of the agreement.

Accordingly, Cadillac did not comply with the mandates of the early termination clause, and the Boersma parcel "immediately revert[ed]" to Haring Township as a result. The trial court correctly granted Haring Township summary disposition pursuant to MCR 2.116(I)(2).

Affirmed.

/s/ Henry William Saad
/s/ Donald S. Owens
/s/ Kirsten Frank Kelly

---

[11] In its reply brief, Cadillac notes that its wastewater treatment plant *accepts* "hauled waste from destinations that originate from within the [C]ity." However, Cadillac does not state that it *provides* septic and/or waste removal via truck to any properties within its jurisdiction—except the Boersma parcel. Accordingly, as Haring Township notes, the "sewer services" provided to the Boersma parcel are *unlike* the "sewer services" provided by Cadillac to any other property within the city's jurisdiction. The sewer services provided by the city to all other properties within its jurisdiction are those stressed by Haring Township (and mentioned by Cadillac): sewer pipes that remove sewage from a property, and that are linked to Cadillac's wastewater treatment plant.