*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEPHEN M. RYAN, PLLC,

Plaintiff-Appellant,

v

CHRIS T. CHRISTENSEN,

Defendant-Appellee.

UNPUBLISHED
January 15, 2026
9:26 AM

No. 370170
Wayne Circuit Court
LC No. 19-016751-CB

Before: GADOLA, C.J., and REDFORD and RICK, JJ.

PER CURIAM.

In this debt-collection action, plaintiff-appellant, Stephen M. Ryan, PLLC, appeals as of right the trial court's opinion and order granting summary disposition under MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted) and (C)(10) (no genuine issue of material fact) in favor of defendant-appellee, Chris T. Christensen, and denying plaintiff's motion for summary disposition under MCR 2.116(I)(2) (opposing party entitled to summary disposition). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff is a professional limited-liability company owned by its principal attorney, Stephen M. Ryan. Christensen was formerly president and chief executive officer of Advanced Strategies Group, Inc. ("ASG"), which was incorporated in 1994 and dissolved in February 2012. This appeal stems from Ryan's complaint seeking to recover $105,382 in legal fees from Christensen.

Sometime in the 1990s, Ryan performed legal work for ASG when Ryan worked for a large law firm. After Ryan left that firm, he was hired by ASG to perform legal services. For approximately 20 years, Ryan, through his professional company, provided services on various matters to ASG. During that time, ASG paid plaintiff over $100,000 in legal fees. However, throughout Ryan's performance for ASG, there was no written contract or engagement letter between the parties for the legal services performed.

-1-

According to various invoices, plaintiff provided legal services involving Christensen from February 1, 2010 through June 30, 2012, and billed Christensen in care of Advanced Wealth Advisors, LLC, for a total of $118,507. Three additional invoices from 2013 and 2014 were addressed only to Christensen. In total, the invoices stated $132,882 in legal fees was due. Apparently, the invoices went unpaid.

In 2019, plaintiff filed a complaint against Christensen individually for $105,382 in legal fees. The complaint raised one claim of suit on open account and one claim for an account stated. The complaint did not name the now-dissolved ASG or any other corporate entity as a party. Instead, the complaint alleged that at Christensen's request, plaintiff performed various legal services for Christensen personally, but that plaintiff would bill ASG or other companies for those services. According to the complaint, the parties orally agreed that Christensen would remain personally and primarily liable for the legal fees "many years ago." Additionally, the complaint alleged each invoice was mailed to Christensen, and Christensen never contested the invoices and made partial payments.

Plaintiff attached an e-mail Christensen wrote to Ryan to the complaint, insisting that through the e-mail, Christensen acknowledged the validity and accuracy of the amount he owed plaintiff. The e-mail, sent on September 17, 2015, states as follows:

> Steve,
>
> Nothing would make me happier that [sic] to be in a position to give you money toward my bill, however I am just not in a position to do so.
>
> I am hoping the upcoming year will be better for me, I promise as soon as I can I will get you some money.
>
> I am so sorry I cannot pay you at this time.
>
> Chris
>
> Chris T. Christensen
> President & Chief Operating Officer
> Estate Planning & Life Insurance Specialist
> Advanced Wealth Advisors, LLC

Plaintiff also attached a statement of account from his bookkeeper, Taneeca Nero, which stated "[d]efendant is justly indebted to [p]laintiff in the amount of $105,382.18 over and above all legal setoffs and counterclaims." Subsequently, plaintiff alleged that the amount Christensen owed was actually $132,882, as reflected in the invoices.

In answer to plaintiff's complaint, Christensen generally denied that he ever hired plaintiff to represent him personally. Instead, he asserted plaintiff performed legal services on behalf of his company, ASG. After filing an answer to the complaint, Christensen made several motions for summary disposition. Attached to a motion for summary disposition under MCR 2.116(C)(7) (claims barred by statute of limitations), Christensen provided an affidavit he executed. In the affidavit, he averred: "Advanced Strategies Group, Inc. hired [p]laintiff for representation on

various matters." Plaintiff opposed the motion and requested the trial court grant summary disposition in its favor under MCR 2.116(I)(2). In his briefing, plaintiff made various negative comments about Christensen personally and as a business professional. In reply, defendant asserted plaintiff's response violated Rule 1.6 of the Michigan Rules of Professional Conduct ("MRPC") by including irrelevant commentary about defendant. On December 15, 2020, the trial court denied both motions. Subsequently, both parties brought various motions for summary disposition, all of which were denied. The parties also twice participated in facilitation without success.

In May 2023, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing plaintiff failed to establish a claim of account stated or open account and there was no genuine issue of fact because Christensen was never plaintiff's client and did not owe plaintiff any money for ASG's legal fees. Christensen argued ASG, which was a separate entity, may owe plaintiff for unpaid legal fees; however, he never personally retained Ryan or plaintiff, his law firm, and never guaranteed the legal fees of ASG. Additionally, Christensen renewed his motion for dismissal as a sanction for plaintiff violating MRPC 1.6, alleging that plaintiff improperly disclosed confidential information obtained through its representation of ASG.

Christensen executed an affidavit on April 19, 2023, in which he averred:

2. My company, ASG Strategies Group, Inc. ("ASG") retained [p]laintiff to perform legal work for ASG in the early 1990s. I never retained [p]laintiff or Stephen Ryan personally, nor did I guarantee or in any way become responsible for the legal bills of ASG.

3. Throughout the period of time [p]laintiff represented ASG, I retained other law firms to perform legal work for me personally, such as estate planning and other matters. Neither [p]laintiff nor Steven Ryan was ever retained to do work for me personally.

4. Throughout the period of time that [p]laintiff represented ASG, Stephen Ryan never informed me that I was personally liable for the debts of ASG.

5. Sometime in 2014, I did send Stephen Ryan $5000 on the ASG bill. I made this payment not because I owed the money personally, but because Steve Ryan asked me to pay something on the ASG bill.

6. In September of 2015 Stephen Ryan called and left me a voice mail message asking me if ASG was going to pay its legal bill. I responded to Ryan's e-mail [sic] via e-mail on September 17, 2015. Although I used the words "Nothing would make me happier than to be in a position to give you money toward my bill . . .," I was referring to the bill of ASG. I frequently referred to matters relating to ASG, in the first person. I used such terms as "my employees," "my business," and "my revenues" to refer to the employees, business, and revenues of ASG. It was in this context that I used the term "my bill."

Christensen also provided a transcript of a hearing regarding one of the parties' previous motions for summary disposition. During the hearing, Ryan conceded that the invoices largely

related to work performed for ASG when responding to the trial court's commentary that work plaintiff was alleged to have performed on behalf of Christensen but billed to ASG implied the parties engaged in tax fraud:

> *Mr. Ryan*: Well I'd like to respond to the allegations of tax fraud that have been placed against me.
>
> No. 1, I do not recommend companies unless I get, well I like to get a personal guarantee, but the agreement here was that I would bill the companies, and actually the Court is very correct, this is so he could get a necessary deduction for proper and necessary business expenses, that's why it was done, but I see it as just the reverse.
>
> I was going to bill him no matter what and he said, no, bill my company, and when you look at the invoices, *Your Honor, if you ever look at them the vast, vast, vast majority, and I'm talking about something in the high 90% was work done for ASG, for the company.*
>
> *The Court*: Well then the company was your client, not him. [Emphasis added.]

In response, plaintiff opposed Christensen's motion and requested summary disposition in its favor under MCR 2.116(I)(2), restating his argument that he and Christensen orally agreed that Christensen would be individually and personally responsible for all legal fees. Plaintiff reattached the invoices, Nero's affidavit, and Christensen's September 17, 2015 e-mail to support his response and motion. Plaintiff also responded to Christensen's arguments regarding MRPC 1.6.

After a hearing on the motions, the trial court entered an opinion and order granting Christensen's motions under MCR 2.116(C)(8) and (C)(10), denying plaintiff's motion under MCR 2.116(I)(2), and declining to address the parties' arguments regarding MRPC 1.6. In support of its decision to grant summary disposition in Christensen's favor, the trial court explained that the evidence showed that ASG, and not Christensen, was plaintiff's client and no evidence supported that Christensen guaranteed the legal services rendered on behalf of ASG. This appeal followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(8) examines the legal sufficiency of a claim. *Id*. The trial court "must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. The motion may only be granted if "a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

A motion under MCR 2.116(C)(10) examines the factual sufficiency of a claim. *Id*. The trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion may only be granted if there is no genuine issue of

material fact. *Id*. There is a genuine issue of material fact when "the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

Under MCR 2.116(I)(2), the trial court may grant summary disposition in favor of the party opposing summary disposition, "[i]f, after careful review of the evidence, it appears to the trial court that there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law." *Cadillac Rubber & Plastics, Inc v Tubular Metal Sys, LLC*, 331 Mich App 416, 422; 952 NW2d 576 (2020) (quotation marks and citation omitted). Questions of contract interpretation are legal questions reviewed de novo. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 611; 792 NW2d 344 (2010).

## III. ANALYSIS

Plaintiff contends that the trial court decided the wrong issue when it determined that there was no genuine issue of material fact whether Christensen personally guaranteed the fees between plaintiff and ASG. Instead, plaintiff argues the issue was whether Christensen himself was personally and individually liable for the debt based on an oral agreement. Plaintiff additionally contends that he was entitled to summary disposition under MCR 2.116(I)(2) because the evidence established this fact in its favor. We disagree.[1]

In *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543; 837 NW2d 244 (2013), the Michigan Supreme Court explained the nature of actions for an open account and account stated. The purpose of both of these claims "is to recover sums due that arose out of a course of dealing between the parties." *Id*. at 553. Traditionally, an open account is defined as "[a]n unpaid or unsettled account" or "[a]n account that is left open for ongoing debit and credit entries and that has a fluctuating balance until either party finds it convenient to settle and close, at which time there is a single liability." *Id*. at 553-554 (quotation marks and citation omitted).

In contrast, an account stated is "an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance." *Id*. at 554 (quotation marks and citation omitted). An account stated specifically requires the manifestation of assent by both parties to the correctness of the statement between them. *Id*. at 557 (quotation marks and citation omitted). Notably, an open account may convert into an account stated:

> The conversion of an open account into an account stated, is an operation by which the parties *assent* to a sum as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must

---

[1] As an initial matter, we conclude that plaintiff has abandoned this issue for failing to adequately brief it. Plaintiff argues Christensen was individually and personally liable for the debt without setting forth the applicable legal principles. A party may not "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims . . . ." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Nonetheless, we address plaintiff's arguments.

depend upon the facts. That it has taken place, may appear by evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them. [*Id*. at 554-555 (quotation marks and citation omitted).]

Both open-account and account-stated claims involve the application of contract principles. *Id*. at 557, 563. Moreover, both claims may be premised on an express or implied contract. *Id*. at 570. Similarly, because this case involves the assertion of an attorney-client relationship, a contract must be established before an attorney is entitled to be paid for services. *Plunkett & Cooney, PC v Capital Bancorp Ltd*, 212 Mich App 325, 329; 536 NW2d 886 (1995).

In this case, the issue revolves around who plaintiff had a contract with for the legal services rendered. There is no express written contract for legal services or engagement letter between the parties in the lower court record. Instead, plaintiff asserts that it had an oral contract with Christensen for legal services rendered on behalf of Christensen, but paid by ASG. A contract requires a meeting of the minds on all essential terms. *Hall v Small*, 267 Mich App 330, 333; 705 NW2d 741 (2005). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 548; 487 NW2d 499 (1992) (quotation marks and citation omitted). Parties may enter into an oral contract, the terms of which "may be demonstrated by the course of dealing and performance between the contracting parties." *H.J. Tucker & Assoc, Inc v Allied Chucker and Engineering Co*, 234 Mich App 550, 567; 595 NW2d 176 (1999).

Plaintiff first argues the trial court eschewed addressing the issue of whether there was a contract for legal services between plaintiff and Christensen to instead determine whether Christensen guaranteed a contract between plaintiff and ASG. We disagree. The trial court's analysis addressed the existence of a contract between plaintiff and Christensen *and* the existence of a guaranty. The trial court held that there was no genuine issue of material fact whether a contract existed between plaintiff and Christensen because Ryan admitted the "vast majority" of the legal services he rendered was on behalf of ASG. As noted by the trial court, even viewed in a light favorable to plaintiff as the nonmoving party, such a statement acknowledges that plaintiff's client was ASG and not Christensen.

Even without Ryan's admission, a genuine issue of material fact was not shown regarding plaintiff's assertion that the parties entered into an oral contract for legal services. Plaintiff's claim is that sometime in the 1990s, the parties entered into an oral agreement in which legal services rendered by plaintiff on behalf of Christensen individually would be billed to ASG. In support of his motion for summary disposition, Christensen submitted an affidavit in which he averred he never personally retained plaintiff for legal services; rather, all services plaintiff rendered in connection with him were for ASG. In response, plaintiff relied on the invoices and the September 17, 2015 e-mail as evidence of the parties' course of performance to establish the existence of this oral contract between them. Viewing the record in a light most favorable to plaintiff, the evidence was insufficient to show the existence of a material issue of fact regarding who was plaintiff's client. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (explaining that when the moving party meets its initial burden of supporting its position by documentary evidence, the burden then shifts to the opposing party to establish a genuine issue of material fact).

The majority of the invoices were addressed to Christensen in care of Advanced Wealth and a couple invoices were addressed only to Christensen. Several of the invoices expressly indicate work performed for ASG, while others indicate Ryan performed tasks with Christensen. The record establishes that in March 2014, defendant made one payment in the amount of $5,000 toward these invoices. The invoices and partial payment do not support the existence of an oral agreement between the parties. There is a legal distinction and corporate shield between a company and its officers and shareholders. *Dep't of Consumer & Industry Servs v Shah*, 236 Mich App 381, 393; 600 NW2d 406 (1999). Corporations are a legal fiction and it is well established that "corporations can only act through officers and agents." *Altobelli v Hartmann*, 499 Mich 284, 296; 884 NW2d 537 (2016) (quotation marks and citation omitted). Moreover, "the acts of officers and agents of a corporation, within the scope of their employment, are the acts of the corporation." *Id*. at 297 (quotation marks and citation omitted). It is undisputed that ASG became plaintiff's client in the 1990s and engaged plaintiff for various matters until it dissolved in 2012. Given its corporate form, it is no surprise that the invoices would mention Christensen, who was president and chief executive officer of ASG, and would be responsible for acting on behalf of ASG and managing its debts.

Plaintiff further asserts that because Ryan sent the invoices to defendant personally and defendant never objected to them, the invoices established the contractual relationship between the parties. Again, this argument overlooks the distinction between a corporation and its agents. See *id*. In addition to his roles as president and chief executive officer of ASG, Christensen was also its named agent. Consequently, Christensen was the appropriate recipient of bills on behalf of ASG and he would have no reason to object to the invoices because plaintiff was contracted to perform legal services on behalf of ASG.

The September 17, 2015 e-mail does not recontextualize the invoices or otherwise support the existence of the oral agreement between the parties. Apparently, Christensen sent Ryan the e-mail after Ryan left him a voicemail regarding the overdue invoices. Plaintiff relies on the fact that Christensen uses phrases such as "my bill" in the e-mail to support the existence of the oral agreement. However, the fact that Christensen would refer to the invoices as "[his] bill" is in line with the fact that he owned ASG and would conflate himself with the corporate entity when speaking colloquially. Indeed, Christensen explained as much in his affidavit when he averred that he "referred to matters relating to ASG[] in the first person" when acting on behalf of the company.[2]

Review of the record in a light most favorable to plaintiff as the nonmoving party supports only that a contractual relationship for legal services existed between plaintiff and ASG. There is no support that the parties entered a contract for plaintiff to render legal services for Christensen

---

[2] On appeal, plaintiff asks this Court to consider several records that were not presented in the lower court to support its claim. Because these exhibits were not received by the trial court, we decline to consider them on appeal. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal.").

individually. Instead, the record only supports that Christensen was acting on behalf of ASG and in his corporate capacity when dealing with Ryan.[3] Consequently, the trial court did not err when it concluded there was no contract for legal services between the parties. Because Christensen was not plaintiff's client, plaintiff could not establish a series of transactions between the parties for the purposes of demonstrating an open account or a contract based on assent to an agreed balance between the parties. See *Fisher Sand*, 494 Mich at 553, 557.

To the extent plaintiff further argues that Christensen guaranteed the debt owed by ASG, this argument is also without merit. A guaranty contract "is a special kind of contract." *Bandit Indus, Inc v Hobbs Int'l, Inc (After Remand)*, 463 Mich 504, 511; 620 NW2d 531 (2001). A guaranty contract is "to be construed like other contracts, and the intent of the parties, as collected from the whole instrument and the subject-matter to which it applies, is to govern." *Comerica Bank v Cohen*, 291 Mich App 40, 46; 805 NW2d 544 (2010) (quotation marks and citation omitted). However, "a court must approach with caution a claim that the parties have formed a guaranty contract. . . . [A]ssumption of another's debt is a substantial undertaking, and thus the courts will not assume such an obligation in the absence of a clearly expressed intention to do so." *Bandit Indus, Inc*, 463 Mich at 512. A guaranty contract does not require any "specific form of language," but requires "an unambiguous expression of the guarantor's intention to accept that responsibility." *Id.* at 513-514.

The lower court record contains no contract for legal services or engagement letter between the parties. Likewise, there is no contract expressing Christensen's intent to personally guarantee the legal services rendered on behalf of ASG. Plaintiff appears to rely on the September 17, 2015 e-mail as evidence of the guarantee. However, the e-mail does not support such a clear and unambiguous assumption by Christensen. As already noted, although Christensen speaks in the first-person in the e-mail, this does not support a conclusion that Christensen was speaking in his personal capacity as opposed to his corporate capacity on behalf of ASG. Moreover, as noted by the trial court, Christensen expressly disavowed making a payment and expressed regret that he could not pay in the e-mail. Consequently, the e-mail lacks the expression of Christensen's intention to personally accept responsibility for ASG's debts. *Id.* at 512.

In sum, ASG was plaintiff's client and there is no evidence that Christensen personally engaged plaintiff for legal services. Likewise, there is no evidence that Christensen assumed the debt owed by ASG. Absent a course of dealing between the parties or other direct contractual relationship, plaintiff has not articulated why an open account or account stated would exist between the parties. See *Fisher Sand*, 494 Mich at 554, 557. Therefore, the trial court did not err

---

[3] Plaintiff has not asserted in the lower court or in this Court that the corporate form should be disregarded and defendant should be held liable for the acts and debts of ASG. See *Green v Ziegelman*, 310 Mich App 436, 451; 873 NW2d 794 (2015) (explaining the doctrine of piercing the corporate veil).

by granting summary disposition in defendant's favor and denying plaintiff's motion for summary disposition in its favor.

Affirmed.


/s/ Michael F. Gadola
/s/ James Robert Redford
/s/ Michelle M. Rick